BISSOT *v.* THE STATE.

CHANGE OF VENUE.—*Counter Affidavits.—Judicial Discretion.*—Motion by a defendant in a criminal action for a change of venue, founded on his affidavit that he could not have a fair and impartial trial because of the excitement and prejudice against him and his defence in the county, which affidavit was met by the affidavit of sixty citizens residing in different parts of the county, that they had a general acquaintance with the citizens of

Bissot *v*. The State.

their respective neighborhoods, that they had heard of no excitement or prejudice against the prisoner, and that, from their knowledge and acquaintance with the citizens of the county, the prisoner could have a fair and impartial trial of his case at that term of the court.

*Held*, that the question was one within the sound discretion of the court, and that there was no abuse of such discretion in overruling the motion.

CRIMINAL LAW.—*Murder Committed in the Perpetration of Burglary.*—Where, after a person had burglariously broken and entered into a house, and while he was yet within the house, and immediately after a watchman, who came to the door by which said person had so entered, had shot at such person, he shot and killed the watchman;

*Held*, that the homicide, being committed within the *res gestæ* of the burglary, was committed "in the perpetration" of the burglary, within the meaning of section 2, 2 R. S. 1876, p. 423.

INSTRUCTIONS TO JURY.—A defendant in a criminal action cannot complain of an instruction given to the jury which is favorable to him, or of the refusal of the court to give an instruction asked by him, where the court in its charge fully and correctly instructs the jury upon the question involved in the instruction refused.

SAME.—An instruction to the jury which, as far as it is given, is not wrong, will not be held erroneous merely because it is not more complete.

SAME.—*Not Applicable to Evidence.*—It is not erroneous to refuse to give to the jury an instruction asked, though it correctly expresses an abstract principle of law, if there is no evidence in the case to which it is applicable.

NEW TRIAL.—*Surprise.*—A new trial will not be granted to the defendant in a criminal action, on the ground of surprise in the testimony of a witness, where the testimony alleged to be a surprise is immaterial.

SAME.—*Newly-Discovered Evidence.*—A new trial will not be granted because of newly-discovered evidence, where no diligence is shown, and no reason why the evidence was not discovered sooner, and no reasonable probability that it can be produced.

CRIMINAL LAW.—*Conviction Under One Count and Acquittal as to Another.*—On the trial of an indictment containing two counts, the first charging a homicide committed by the defendant "purposely and with premeditated malice," and the second charging the killing to have been done "purposely and with premeditated malice, in the perpetration of burglary," an acquittal as to the first count and a conviction on the second did not acquit the defendant on the whole indictment.

From the Lawrence Circuit Court.

*C. L. Dunham* and —— *Meriweather*, for appellant.

*C. A. Buskirk*, Attorney General, and *R. W. Miers*, Prosecuting Attorney, for the State.

BIDDLE, J.—George Bachtel and Arthur Bissot were indicted for the murder of George J. Carney. The indictment contains two counts. The first for murder in the first degree, and the second for murder committed in the perpetration of a burglary with intent to commit larceny. Motions to quash were made to each count, and overruled. Bachtel pleaded guilty. Bissot pleaded not guilty, and moved the court for a continuance of the cause, founded on affidavits as to the absence of witnesses; whereupon, the State admitted the truth of the facts to which, as it was alleged, the witnesses would testify, and the court overruled the motion. Bissot then moved the court for a change of venue, founded on his affidavit, to which the State filed counter affidavits, and the court overruled the motion. To each of the above rulings Bissot excepted. Trial by jury; verdict, guilty on the second count; motion for a new trial overruled; exception; motion to discharge the prisoner for the reason that the verdict amounts to an acquittal, overruled; exception; judgment; appeal.

It is unnecessary to more particularly state the record here, as we shall notice the errors alleged against the proceedings in the order in which they are discussed by the counsel for appellant.

1. That a change of venue should have been granted to the defendant.

The affidavit of the prisoner, that he could not have a fair and impartial trial, because of the excitement and prejudice against him and his defence in the county, was met by the affidavit of sixty citizens residing in different parts of the county, that they had a general acquaintance with the citizens in their respective neighborhoods; that they had heard of no excitement or prejudice against the prisoner; and that, from their knowledge and acquaintance with the citizens of Lawrence county, the prisoner could have a fair and impartial trial of his case at that term of the court.

It is admitted that this question was one within the sound

discretion of the court, and we cannot see that it was unsoundly exercised.

2. That the verdict of the jury and the judgment of the court are not sustained by the evidence.

We need not consider this question in reference to the first count of the indictment, because upon that the prisoner was acquitted.

The circumstances of the homicide were stated by Bachtel—the co-defendant of Bissot in the indictment—who was called as a witness by the State, as follows:

"On the night of the 19th of January, 1875, or the morning of the 20th, about midnight, I and the defendant, Bissot, broke into the drug store of J. W. Mitchell & Co., in Bedford, in this county, for the purpose of robbing it. We entered by the back door; we took a light of glass out of the back door, reached through and unlocked it; we were at the desk; Carney stepped just inside of the door, and said, "Who are you? Speak, or I will shoot." I exclaimed, "Don't shoot!" But before the words were hardly out of my mouth, Carney did shoot at Bissot. Then Bissot shot at Carney with a duelling pistol. I snapped my pistol at Carney, after Carney shot at Bissot. I do not think my pistol went off. I did not see Carney any more. When the smoke cleared away, we went out of the drug store and made our way out of town."

Thre was no evidence contradicting this statement; nor was it essentially impaired by the cross-examination. It appeared, in other portions of the evidence, that Carney was the marshal of the town and watchman of the building wherein the burglary was alleged to have been committed.

The section upon which the indictment is founded (2 Rev. Stat. 1876, 423, sec. 2) is expressed in the following words:

"If any person of sound mind shall purposely and with premeditated malice, or in the perpetration, or attempt to perpetrate any rape, arson, robbery or burglary, or by administering poison, or causing the same to be done, kill any human being, such person shall be deemed guilty of

murder in the first degree, and upon conviction thereof shall suffer death."

In this case, that the burglary and homicide were both committed, there can be no reasonable doubt; but it is insisted that the homicide was not committed "in the perpetration" of the burglary; and, therefore, being unconnected with the burglary, the facts do not warrant a conviction in a higher degree than manslaughter, if, indeed, they do not excuse the prisoner entirely; that the burglary was consummated as soon as the burglarious entry was made with the felonious intent as charged; and that, as the homicide was committed after the entry, it was not, therefore, committed "in the perpetration" of the burglary. If this construction were to be given to the statute, it would be quite impracticable to ever convict for a murder committed in the perpetration of any of the felonies mentioned in this section. The intention of the legislature, in enacting the section, was, doubtless, to class certain homicides in the highest degree of murder without containing the ingredient of premeditation, malice, or intention, which otherwise could not possibly be of a higher degree than manslaughter, and, in many cases, might not amount to criminal homicide at all. In this case, take away the elements of burglary which surround it, and the prisoner might plausibly contend that he had committed nothing more than excusable homicide; for it appears that the deceased shot at him first, and thus put his life in immediate jeopardy. It could not be higher than manslaughter, at most; and in such cases it might be accidental, and then, if held not to be "in the perpetration" of the burglary, would be excusable. If the charge was murder committed "in the perpetration" of a robbery, as soon as the accused had forcibly and feloniously, or by violence or putting in fear, taken from the person of another any article of value, the robbery would be consummated; yet, if immediately afterwards, in the struggle to release himself and escape, he had killed his victim, the degree of the homicide, unconnected with the robbery, would be no higher than man-

slaughter. So, if the charge was murder committed "in the perpetration" of arson, as soon as the criminal had wilfully and maliciously set fire to a dwelling-house, the arson would be accomplished, and he could flee; yet it might be that some human being was in the building at the time, and hours afterwards was consumed in the flames. In such a case, the homicide, if held not to be committed "in the perpetration" of the arson, would be merely manslaughter, being a homicide perpetrated in the commission of an unlawful act, without malice, express or implied, although the felon had committed two crimes of the most shocking character. True, the homicide might be murder in such a state of facts, when it was committed with premeditation, malice, and intention, and the arson was merely the means of accomplishing the crime. And if the charge was murder committed "in the perpetration" of a rape, as soon as the felon had unlawfully and forcibly, and against the consent of the woman, effected sexual penetration, the crime by statute would be complete; yet, if he still persisted in his nefarious object, until he had accomplished the natural purpose of the sexual act, and in such persistence killed his victim, if it was held not to be "in the perpetration" of the rape, he would be guilty of only the lowest degree of homicide, although he had committed the foulest and also highest crime known against nature.

Although we must construe criminal statutes strictly, adhere closely to the definition of crimes, and interpret technical words according to their fixed meaning, yet we cannot give to the section under consideration the construction contended for by the appellant. In our opinion, where the homicide is committed within the *res gestæ* of the felony charged, it is committed in the perpetration of, or attempt to perpetrate, the felony, within the meaning of the statute; and, being convinced in this case that the burglary charged was committed, and that the homicide was committed within the *res gestæ* of the burglary, we must hold that it was committed in the perpetration of the burglary, within the true

intent and fair meaning of the statute.   It seems to us that such a construction is safe to the State and the citizen, and the only one by which the intention of the legislature can be practically carried into effect.   And we think, according to this view, that the evidence in this case fairly warrants the conclusion, beyond a reasonable doubt, that the homicide alleged was committed "in the perpetration" of the burglary, as charged in the indictment.

3.  It is insisted by the appellant, that the court erred in giving instructions to the jury.

The first specific objection made is, that a certain instruction implies that the jury must take the law from the court. The language of the instruction is as follows:

" By the constitution of Indiana, you are the judges of the law as well as the facts.   Upon the facts of the case we have nothing, whatever, to say; it is your exclusive province to decide upon them ; ours is to instruct you in regard to the law; and while I shall endeavor to give you a plain, clear, and impartial statement of the law pertaining to the points that arise and grow out of this case as presented, you are to also remember that it is not intended thereby to thus bind your consciences, but to enlighten your judgments, if so be you should so regard it."

We can see no error in this instruction.

The second objection is to the following instruction :

"The indictment contains two counts, or independent charges of murder ; but these two charges arise on the same state of facts.   The first count is for murder in the first degree; the second is for killing in the perpetration of a burglary.   It is proper to thus charge the offence in different ways, so as to meet the evidence on the trial."

It is urged that this charge is erroneous, because the law applicable to each count in the indictment is essentially different.   The instruction does not state that the same law and the same state of facts will support either count, but that the two charges arise on the same state of facts, and that

the offence is charged in different ways, so as to meet the evidence on the trial. This is not erroneous.

The court also instructed the jury, that "homicide may be lawful or unlawful; it is lawful when it is justifiable, as in war or self-defence, and in the execution of legally condemned criminals." That homicide "is lawful when it is justifiable," seems, to our way of thinking, a self-evident proposition; and as there is no evidence of "war" or "execution" in this case, we do not think the appellant can complain because the court told the jury that homicide was justiable in self-defence.

Another instruction complained of was as follows:

"It is not necessary for me to go into this subject particularly, further than to present to you the distinction to be taken between murder in the first and second degrees and manslaughter, and, so far as it may be proper, to apply it to the case in hand."

The court then proceeds at length to define these distinctions, which is correctly done, in the course of which it says, that "manslaughter is the unlawful killing upon a sudden heat, without malice, express or implied," and does not give the other branch of the definition of manslaughter, namely, a killing in the commission of some unlawful act. It is objected to this instruction, or rather these instructions, for they contain several unnumbered sentences, that no part of it relates to excusable homicide, and that it does not give a correct definition of malice, but is calculated to mislead and confuse the jury. Wherein it is calculated to "mislead and confuse the jury" is not pointed out; and as to malice, we think it was correctly defined, but, if not, as the prisoner was acquitted on the first count in the indictment, malice becomes immaterial, because it is not a necessary ingredient in the crime charged in the second count, upon which the prisoner was convicted; and if the prisoner desired any instruction to be given to the jury relative to excusable homicide, it should have been requested of the court on his behalf. Not having done so there, it must be held as

waived here.   An instruction, which, as far as it is given, is not wrong, will not be held erroneous in this court merely because it is not more full and complete.

The appellant also complains of an instruction defining burglary, and the crime charged in each count of the indictment, but we can see no objection to that part of the charge. Indeed, it would be surprising to us to find an error in the proceedings of a circuit court in a matter so elementary as the definition of a crime.    In the course of the same instruction, the court said:

"But if you find   *   *   *    that while carrying out said burglary, the deceased, a night watchman, came up to the door by which the defendant and Bachtel had entered, and then defendant, for the purpose of escaping, and not for the purpose of further prosecuting said burglary, fired upon deceased and killed him, then you could not find the defendant guilty of murder in the first degree, for a killing in the perpetration of a burglary, · but in such case it would be with the intent to escape."

We think this part of the instruction, up to the very edge of the law, was favorable to the prisoner.   Indeed, it seems to us that the State would have had more ground to complain of it, as applicable to the second count of the indictment, than the appellant.

We have thus examined all the instructions given by the court in the case, and upon careful consideration are unable to find anything in them of which the appellant has a right to complain.

4. The appellant asked several instructions, which the court refused to give. ᾽

"1. If an officer, in attempting to make an arrest, uses more force than is necessary, he becomes a wrong-doer, and the person sought to be arrested may resist such excessive force by force, even to the taking of life, if necessary to save his life or to protect himself from great bodily harm."

The court refused this instruction, and gave the following:

"2. If an officer, or other person, who attempts to pro-

vent another from committing a felony, uses more force than is reasonably necessary, he becomes a wrong-doer, and the person sought to be prevented may resist said excess of force by force, even to the killing, if necessary to preserve his own life from such excessive use of force or to save himself from great bodily harm."

We see no error in this. The instructions are essentially the same in principle, while the latter is more applicable to the case.

The court also refused the following instruction asked by the appellant:

" 5. A defendant has a right peaceably to evade arrest."

Conceding that this correctly expresses an abstract principle of law, there was no evidence in the case to which it was applicable. It was, therefore, not erroneous to refuse it. This question has often been decided by this court.

And the following instruction was asked by the appellant, and refused by the court:

" 7. If the reasonable doubt arise out of the transaction itself, the burden of proof is not shifted upon the defence, and the defendant must be acquitted."

But the court instructed the jury upon the same question as follows:

" You are to be satisfied beyond a reasonable doubt of all the material facts necessary to be proved to make out the case."

The court then, after endeavoring to more particularly explain a reasonable doubt, proceeds:

" It is not a mere speculative doubt, voluntarily excited in the mind, as an evasion of a disagreeable duty; on the other hand, you are required to be satisfied to that degree that excludes from your minds all reasonable doubt as to the guilt of the accused."

The court also added, further:

"And on this point, I also give you an instruction asked for by the defendant, as follows:

" 6. The question of reasonable doubt goes to every material allegation of the indictment, and if there is a reasonable doubt as to any one of those allegations, the jury must acquit."

We think this goes fully to the question of reasonable doubts, and covers the whole ground of the case as to that point; besides, there was no question in the evidence of shifting the burden of proof upon the defence, and no evidence offered by the prisoner that was rejected.

5. The appellant also claims that he should have had a new trial on account of surprise in the testimony offered by the State, and for newly-discovered evidence. These grounds are founded upon two affidavits stating that the appellant was surprised by the testimony of J. W. Norris, who testified on the trial that the appellant had said to him, while in the Olney jail, " We did not burn the stables, but I don't deny shooting the marshal at Bedford;" also, that he believes he can prove by R. A. Kincade that Norris said to Kincade, " I never heard the boy say anything about shooting the marshal," but that Bachtel had talked to him, Norris, about the shooting, and confessed to the killing of Carney; that the affiant did not ascertain that he could prove such facts by said Kincade until since his trial.

As to the testimony which is alleged as a surprise, it seems to us, in the light of the evidence in the case, to be quite immaterial. The homicide is proved beyond a reasonable doubt.

As to the newly-discovered evidence, no diligence is shown, and no reason why it was not discovered sooner. In neither case is the affidavit of Kincade produced, by whom he expects to contradict the admission made to Norris and prove the newly-discovered facts, because, as is alleged, Kincade " had left for his home in the State of Illinois;" but at what time he left, and where his home in Illinois is, are not stated; and no reasonable probability that his testimony can ever be procured is shown. The affidavits, in our judgment, are insufficient.

6. And lastly, the appellant insists that the verdict of the jury amounted to a verdict of acquittal. His argument in support of this proposition is as follows:

"The first count charges the killing to have been done 'purposely and with premeditated malice.' This is certainly the most criminal degree of homicide known to law or reason. The second count charges the killing to have been done 'purposely and with premeditated malice,' the very language in which the highest degree of homicide is charged in the first count; to it only is added, that it was done ' in the perpetration of burglary.'

"Is not the last allegation merely surplusage?

"The crime of murder was completely set out in this count, as in the first, without it; for if the killing was done purposely and with premeditated malice, it made no difference what the defendant was doing at the time it was done, whether in the commission of a burglary or otherwise, for it was done purposely and with premeditated malice, which made it murder in the first degree, in and of itself. If so, then the acquittal upon the first count was an acquittal of the charge of killing purposely and with premeditated malice, as alleged in the second count, and must be construed as a complete acquittal of the gravamen of the charge of the whole indictment."

We do not perceive the force of this argument. That an acquittal on the first count, and a conviction on the second, should acquit the defendant on the whole indictment, is a new proposition to us, and one which we cannot regard as sound.

We have thus gone through the record, examined each exception taken by the appellant, and are unable to find any error in the proceedings. Indeed, it seems to us that the appellant was properly indicted, fairly tried, and justly convicted, according to the law and the facts. We cannot, therefore, disturb the judgment.

The judgment is affirmed.