33 A.3d 1071

Warren Jerome YATES

v.

STATE of Maryland.

No. 2399, Sept. Term, 2009.

Court of Special Appeals of Maryland.

Dec. 22, 2011.

702

Lauren K. Collogan (Williams & Connolly, LLP, on the brief), Washington, DC, for Appellant.

Daniel J. Jawor (Douglas F. Gansler, Atty. Gen., on the brief), Baltimore, MD, for Appellee.

Panel: GRAEFF, KEHOE, RONALD B. RUBIN, (Specially Assigned), JJ.

GRAEFF, J.

A jury sitting in the Circuit Court for Baltimore County convicted Warren Jerome Yates, appellant, of second degree felony murder, use of a handgun in the commission of a crime

of violence, use of a handgun in the commission of a felony, drug trafficking with a firearm, distribution of marijuana, and other offenses arising from the shooting of Sherry Worcester. The sentencing court imposed consecutive sentences totaling 95 years.

On appeal, appellant raises four questions for review, which we have rephrased and reordered as follows:

1. Did the circuit court err in admitting hearsay evidence as a prior inconsistent statement?

2. Was the evidence sufficient to support appellant's conviction of felony murder where the conduct resulting in the victim's death did not occur during the commission of the underlying felony?

3. Did the circuit court plainly err in failing to instruct the jury that, in order to convict Mr. Yates of felony murder, the State had to prove that the conduct resulting in the victim's death occurred during the commission of the underlying felony?

4. Was the evidence sufficient to support appellant's use of a handgun convictions in the absence of evidence that the gun used was a handgun?

For the reasons set forth below, we shall affirm the judgments of the circuit court.

## FACTUAL AND PROCEDURAL BACKGROUND

On January 7, 2009, Ms. Worcester was shot and killed outside of her home in Middle River, Maryland. She had gone outside to remove the trash and was talking with relatives when the group heard gunshots. Ms. Worcester said: "I've been hit." She died of a single gunshot wound.

On October 6, 2009, trial commenced against appellant and his co-defendant, Donald Kohler. The State presented testimony from nineteen witnesses. Four of these witnesses, Stephanie Foltz, William Griffin, Chris Jagd, and Justin Wimbush, testified that they were present at a home in Middle River, Maryland on January 7, 2009, when Mr. Kohler pur-

chased four pounds of marijuana. Although details of the transaction varied, the testimony was consistent that the drugs ultimately were given to Mr. Kohler in exchange for money, which was wrapped in a bag.

Mr. Jagd testified that, after Mr. Kohler took the drugs and left the house, appellant "opened the bag and noticed that the money was fake." Appellant ran out of the house after Mr. Kohler.

Three witnesses testified regarding the events that took place after the fake money was discovered. Mr. Wimbush testified that he saw appellant run after Mr. Kohler into an alley. He heard gunshots, and then he saw appellant running back toward the house from the top of the alley. Mr. Wimbush saw appellant get into a car with Mr. Griffin and leave.

Mr. Jagd also saw appellant chase Mr. Kohler. Mr. Jagd initially testified that he did not see appellant shoot a gun, but he saw a gun in appellant's hand when appellant ran out the front door after Mr. Kohler. Counsel for Mr. Kohler then questioned Mr. Jagd about his statement to Detective Sekou Hinton that he saw appellant "aim the pistol, pause, aim like he was trying to hit him, pause, and then move the gun to the side and then fire." Mr. Jagd then stated that he "just remembered" that he did see Mr. Yates fire six shots with a "revolver." When questioned about his statement to the police that the gun was a "semi-automatic" handgun, he admitted that he did not "know the difference between an automatic and a revolver." Mr. Jagd testified that he spoke with appellant after the shooting. As discussed in more detail *infra*, he could not recall exactly what appellant said, but he testified that he thought appellant said: "I don't know if I got him" or "I think I got him."

Mr. Griffin testified that he saw appellant run out the front door, and he then heard two gunshots. He met appellant at appellant's car, and as they were leaving, he asked appellant: "[W]hat happened with the gunshots." Appellant replied that "he fired the gun."

At the conclusion of the State's case, counsel for both appellant and Mr. Kohler moved for judgment of acquittal on all counts. The court denied the motions.

Appellant then rested without introducing any evidence. Mr. Kohler introduced some evidence on his behalf, but he did not testify.[1] The defendants renewed their motions for judgment of acquittal, which the court denied.

As indicated, the jury convicted appellant of second degree felony murder, use of a handgun in the commission of a crime of violence, use of a handgun in the commission of a felony, drug trafficking with a firearm, distribution of marijuana, and other offenses.[2] This timely appeal followed.

## DISCUSSION

## I.

### Hearsay

■ Appellant's first contention involves Detective Hinton's testimony regarding his interview with Mr. Jagd after the murder. Detective Hinton testified, over objection, about a statement Mr. Jagd made to him after the murder. Mr. Jagd advised that, as appellant was leaving the scene, appellant stated: "I popped that [N . . .]." Appellant argues that this testimony was inadmissible hearsay, which severely prejudiced him.

The State does not argue that the evidence was properly admitted. Rather, it asserts that, "[e]ven assuming that the

---

1. Mr. Kohler called the victim's sister-in-law as a witness, questioning her regarding potential inconsistent statements she made regarding the appearance of a man she saw immediately before the shooting, including her statement to the police that the man was between 17 and 20 years old. Counsel for Mr. Kohler then advised the jury that the parties stipulated that Mr. Kohler was born in 1980, which meant that Mr. Kohler was 29 years old at the time of the trial.

2. The jury convicted Mr. Kohler of second degree felony murder, conspiracy to distribute marijuana, and possession with intent to distribute marijuana.

trial court erred, reversal is not warranted because the essential content of Jagd's statement," that appellant admitted that he shot the gun, "was elsewhere properly admitted without objection, thereby obviating any unfair prejudice."

The testimony at issue was elicited by counsel for Mr. Kohler, appellant's co-defendant. During the State's direct examination of Mr. Jagd, he testified that he could not remember what appellant said to him after the shooting. On cross-examination, Mr. Kohler's attorney followed up on this questioning, asking again if Mr. Jagd remembered what appellant said to him when appellant was running back to the house after the shooting. Mr. Jagd replied: "Nah. I said something to him. I said, did you shoot him? I don't remember exactly what he said. I think he said, I don't know if I got him, or something around that, or I think I got him. I'm not sure." Mr. Jagd testified that he could not remember appellant's exact words. When counsel for Mr. Kohler questioned Mr. Jagd about his statement to Detective Hinton, Mr. Jagd denied that appellant made the above-referenced statement, reiterating that he asked appellant, "did you shoot him," and appellant said: "I think so, or something around that."

Counsel for Mr. Kohler subsequently revisited the issue with Detective Hinton. Detective Hinton testified that Mr. Jagd told him, during an interview shortly after the shooting, that appellant, while running back to the house, said: "I popped that [N . . . ]." The court permitted the testimony as a "prior inconsistent statement."

A prior statement by a witness that is inconsistent with the witness's testimony in court generally is admissible to impeach the credibility of the witness. *Stewart v. State*, 342 Md. 230, 236, 674 A.2d 944 (1996). Here, however, counsel for Mr. Kohler did not use the statement to show that Mr. Jagd was an incredible witness, but rather, he used the evidence as substantive evidence. Counsel for Mr. Kohler stated in closing argument that this statement showed that Mr. Kohler, who is white, was not the purported buyer in the drug deal.

When prior inconsistent statements are offered to prove the truth of the matter asserted, the statements are hearsay. *Stewart,* 342 Md. at 236, 674 A.2d 944. Generally, hearsay is inadmissible. Md. Rule 5–802.

Pursuant to Md. Rule 5–802.1(a), however, prior inconsistent statements are admissible as substantive evidence if certain requirements are met. The rule provides:

The following statements previously made by a witness who testifies at the trial or hearing and who is subject to cross-examination concerning the statement are not excluded by the hearsay rule:

(a) A statement that is inconsistent with the declarant's testimony, if the statement was (1) given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding or in a deposition; (2) reduced to writing and was signed by the declarant; or (3) recorded in substantially verbatim fashion by stenographic or electronic means contemporaneously with the making of the statement.

Md. Rule 5–802.1(a).

Here, as appellant notes, there was no evidence that Mr. Jagd's statement to Det. Hinton was given under oath, reduced to writing and signed by the declarant, or recorded in a substantially verbatim fashion. Thus, the prior inconsistent statement was not admissible as substantive evidence. The trial court, however, never limited its use to impeachment, either at the time the statement was admitted or during jury instructions, and counsel for Mr. Kohler used the statement as substantive evidence.

As indicated, however, the State asserts that, even if the admission of the statement was error, it was not reversible error because there was no unfair prejudice. The Maryland appellate courts have set forth the standard for assessing harmless error as follows:

[W]hen an appellant, in a criminal case, establishes error, unless a reviewing court, upon its own independent review of the record, is able to declare a belief, beyond a reasonable doubt, that the error in no way influenced the verdict, such

error cannot be deemed "harmless" and a reversal is mandated. Such reviewing court must thus be satisfied that there is no reasonable possibility that the evidence complained of—whether erroneously admitted or excluded—may have contributed to the rendition of the guilty verdict. *Perez v. State*, 420 Md. 57, 66, 21 A.3d 1048 (2011) (quoting *Dorsey v. State*, 276 Md. 638, 659, 350 A.2d 665 (1976)).

This Court and the Court of Appeals have found the erroneous admission of evidence to be harmless if evidence to the same effect was introduced, without objection, at another time during the trial. *See Robeson v. State*, 285 Md. 498, 507, 403 A.2d 1221 (1979) ("The law in this State is settled that where a witness later gives testimony, *without objection*, which is to the same effect as earlier testimony to which an objection was overruled, any error in the earlier ruling is harmless."), *cert. denied*, 444 U.S. 1021, 100 S.Ct. 680, 62 L.Ed.2d 654 (1980); *Peisner v. State*, 236 Md. 137, 145, 202 A.2d 585 (1964) (any error in the admission of testimony "was rendered harmless" by the admission of competent "evidence to the same effect"), *cert. denied*, 379 U.S. 1001, 85 S.Ct. 721, 13 L.Ed.2d 702 (1965); *Berry v. State*, 155 Md.App. 144, 170, 843 A.2d 93 ("We shall not find reversible error when objectionable testimony is admitted if the essential contents of that objectionable testimony have already been established and presented to the jury without objection through the testimony of other witnesses."), *cert. denied*, 381 Md. 674, 851 A.2d 594 (2004); *Williams v. State*, 131 Md.App. 1, 27, 748 A.2d 1 (where evidence to the same effect as the objected to evidence was admitted, any error in the admission of the objectionable evidence was harmless), *cert. denied*, 359 Md. 335, 753 A.2d 1032 (2000).

In the present case, the critical content of the objectionable statement, that appellant fired the gun that killed the victim, was admitted without objection on three other occasions. Mr. Jagd testified that, when appellant was walking back toward the house, he asked appellant "did you shoot him?" Mr. Jagd testified that appellant replied: "I don't know if I got him, or something around that, or I think I got him." He reiterated

that, when he asked appellant if he shot the buyer, appellant stated: "I think so." Similarly, Mr. Griffin testified that, after the shooting, he asked appellant "what happened with the gunshots," and appellant replied that he "fired the gun." All of these statements, which were admitted without objection, evidenced appellant's admission that he fired the gun. Accordingly, the admission of Detective Hinton's testimony, which also constituted an admission that appellant believed he shot the drug purchaser, was cumulative to the other evidence that appellant shot at the drug purchaser, and therefore, it was harmless error that does not require reversal of appellant's conviction.

Appellant argues that the error was not harmless because the statement was "inflammatory" and "provocative." When asked to expound on that contention in oral argument, counsel stressed that the testimony: (1) involved a "boastful" confession, with appellant happy about killing the drug purchaser; and (2) it was testimony from a police officer.[3] Appellant asserts that Detective Hinton's testimony, that appellant "brazenly confessed to committing the crimes," was prejudicial because it was "far more compelling than the halfhearted accounts" given by the other witnesses.

We disagree. A central issue in this case was whether appellant shot Ms. Worcester.[4] Two witnesses testified that appellant admitted that he fired the gun. Detective Hinton's testimony, although characterizing appellant's admission of the shooting in a more provocative manner, was merely relaying

---

3. Counsel did not rely on the pejorative nature of the statement. Nor did appellant argue below that the statement should have been excluded pursuant to Rule 5–403 because the language used was unduly prejudicial.

4. A significant portion of defense counsel's closing argument to the jury was that the State failed to show beyond a reasonable doubt that he was the shooter. Counsel argued that no guns or bullets were found in appellant's house, in his vehicle, or on his person, and he emphasized inconsistencies in Mr. Jagd's and Mr. Griffin's testimony that appellant was the shooter.

what another witness told him, and it was cumulative to the prior testimony on this issue.

One factor that an appellate court considers in determining whether the admission of inadmissible evidence was harmless error is " 'the use the State made' of the inadmissible [evidence]." *Harrod v. State*, 423 Md. 24, 40, 31 A.3d 173 (2011) (quoting *Anderson v. State*, 420 Md. 554, 569, 24 A.3d 692 (2011)). In both *Harrod* and *Anderson*, the State emphasized the inadmissible evidence in closing argument, which illustrated the importance of the evidence and precluded a finding of harmless error. *Harrod*, at 41–42, 31 A.3d at 183–84; *Anderson*, 420 Md. at 569, 24 A.3d 692. Here, by contrast, the State did not mention the objected to testimony of Detective Hinton in its closing argument. Rather, as indicated, the only reference to the statement was by counsel for Mr. Kohler, who relied on the statement to suggest that Mr. Kohler, who is white, was not the purchaser of the drugs.

Given that the State did not rely on the evidence in closing argument, and that it was cumulative to other evidence that appellant fired the gun he was holding after he ran after Mr. Kohler, we hold that the admission of Detective Hinton's testimony was harmless error. Appellant is entitled to no relief in this regard.

## II.

### Felony Murder

#### A. Sufficiency of the Evidence

Appellant contends that the evidence was insufficient to support his conviction for second degree murder because the State failed to prove all of the elements of felony murder. Specifically, appellant argues that "the underlying felony of distribution was complete prior to the shooting," and therefore, the State failed to prove that the murder occurred during the commission of the felony.

The State argues that appellant's argument takes too narrow a view of the felony murder doctrine. It argues that "the

evidence was legally sufficient to convict [appellant] of second degree felony murder because [appellant] killed [Ms.] Worcester during the 'res gestae' of the drug deal."

When reviewing the sufficiency of the evidence to sustain appellant's convictions, we must determine, after viewing the evidence in the light most favorable to the State, if " 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *Burlas v. State*, 185 Md.App. 559, 568, 971 A.2d 937 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)), *cert. denied*, 410 Md. 166, 978 A.2d 245 (2009). If the evidence " 'showed directly, or circumstantially, or supported a rational inference of facts which could fairly convince a trier of fact of the defendant's guilt of the offenses charged beyond a reasonable doubt[,]' then we will affirm the conviction." *Bible v. State*, 411 Md. 138, 156, 982 A.2d 348 (2009) (quoting *State v. Stanley*, 351 Md. 733, 750, 720 A.2d 323 (1998)).

In *Fisher v. State*, 367 Md. 218, 262–63, 786 A.2d 706 (2001), the Court of Appeals held that felony murder in the second degree is a cognizable offense under the common law of this State. The Court explained: "If the felonious conduct, under all of the circumstances, made death a foreseeable consequence, it is reasonable for the law to infer from the commission of the felony under those circumstances the malice that qualifies the homicide as murder." *Id.* at 262, 786 A.2d 706. The underlying felony must involve danger to life, which is determined by looking to the nature of the crime or "the manner in which it was perpetrated in a given set of circumstances." *Id.* at 263, 786 A.2d 706. In *Fisher*, the Court upheld a second degree felony murder conviction based upon child abuse. *Id.*

In the present case, the underlying felony was distribution of marijuana. Appellant does not argue that this crime is not a sufficient predicate felony to support a second degree felony murder charge. His challenge focuses on the timing of the killing.

The Court of Appeals has explained that, under Maryland common law, a felony-murder conviction is appropriate only if the State proves "that the defendant committed the underlying felony and that the death occurred 'in the perpetration of [that] felony.'" *Metheny v. State,* 359 Md. 576, 623, 755 A.2d 1088 (2000) (quoting *Newton v. State,* 280 Md. 260, 269, 373 A.2d 262 (1977)). *Accord Roary v. State,* 385 Md. 217, 227, 867 A.2d 1095 (2005) ("To obtain a conviction for felony-murder, the State is required to prove the underlying felony and that the death occurred during the perpetration of the felony."); *Deese v. State,* 367 Md. 293, 305, 786 A.2d 751 (2001) (to "qualify as a basis for second degree murder," the "victim's death, of course, must be 'caused during the commission of, or attempt to commit,' the underlying felony") (quoting *Lindsay v. State,* 8 Md.App. 100, 104–05 n. 6, 258 A.2d 760 (1969)); *State v. Stouffer,* 352 Md. 97, 116, 721 A.2d 207 (1998) (killing must be "'in furtherance of the felonious undertaking'") (quoting *Campbell v. State,* 293 Md. 438, 446, 444 A.2d 1034 (1982)).[5]

Appellant argues that the murder here did not occur during the commission of the felony. He contends that the crime of distribution requires the State to "prove that the Defendant sold, exchanged, transferred or gave away" marijuana, and that, "[g]iven the evidence presented at trial, the jury could not have concluded anything but that the events surrounding Ms. Worcester's death occurred *after* the predicate felony of distribution had been completed." Appellant asserts that "all three testifying eyewitnesses confirmed that the drugs were 'transferred' from Messrs. Griffin and Yates to Mr. Kohler before Mr. Kohler left the house and Mr. Yates followed with the others." Thus, appellant argues, the State failed to prove

---

5. A crime is elevated to murder in the first degree if it is "committed in the perpetration of or an attempt to perpetrate" any of 12 enumerated felonies, including arson, burning an outbuilding, burglary in the first, second, or third degree, car jacking, escape in the first degree from a correctional facility, kidnapping, mayhem, rape, robbery, sexual offense in the first or second degree, sodomy, or the manufacture or possession of destructive devices. Md.Code (2002) § 2–201 of the Criminal Law Article.

that the death of Ms. Worcester occurred during the perpetration of the distribution.

Several courts have rejected the argument advanced by appellant, that a felony is "complete" when the definitional elements of an offense have been satisfied. In *Bissot v. State*, 53 Ind. 408, 413–19 (1876), the Supreme Court of Indiana engaged in a detailed discussion of the problem with this argument. In that case, the defendant broke into a drug store intending to rob it, and when he was confronted by the owner with a gun, the defendant shot and killed the owner. *Id.* at 410–11. The court rejected the argument that the homicide was not committed "in the perpetration' of the burglary" because it did not occur "as soon as the burglarious entry was made." *Id.* at 412. The court noted: "If this construction were to be given to the statute, it would be quite impracticable to ever convict for a murder committed in the perpetration of any of the felonies" set forth by statute. *Id.*

The court explained:

> If the charge was murder committed "in the perpetration" of a robbery, as soon as the accused had forcibly and feloniously, or by violence or putting in fear, taken from the person of another any article of value, the robbery would be consummated; yet, if immediately afterwards, in the struggle to release himself and escape, he had killed his victim, the degree of the homicide, unconnected with the robbery, would be no higher than manslaughter.

*Id.*

A similar problem would arise, the court stated, if the charge was murder committed in the perpetration of arson. *Id.* at 413. As the court explained, accepting appellant's view would mean that, "as soon as the criminal had wilfully and maliciously set fire to a dwelling-house, the arson would be accomplished, and he could flee; yet it might be that some human being was in the building at the time, and hours afterwards was consumed in the flames." *Id.*

The Court held that, "where the homicide is committed within the *res gest[a]e* of the felony charged, it is committed in the perpetration of" the felony. *Id.*

More recently, the Michigan Supreme Court cited *Bissot* for the proposition that

> "perpetration" includes not only the definitional elements of the predicate felony, but also includes those acts that are required to complete the felony—such as those that occur after the commission of the predicate felony while the felon is attempting to escape. To hold otherwise would make it "quite impracticable to ever convict for a murder committed in the perpetration of any of the [enumerated felonies]."

*People v. Gillis,* 474 Mich. 105, 712 N.W.2d 419, 426 (2006) (quoting *Eddy v. State,* 496 N.E.2d 24, 28 (Ind.1986), quoting in turn *Bissot,* 53 Ind. at 412), *cert. denied,* 550 U.S. 920, 127 S.Ct. 2132, 167 L.Ed.2d 868 (2007). The court explained that it adopted "the *res gestae* principle, which holds that a murder committed during the unbroken chain of events surrounding the predicate felony is committed 'in the perpetration of' that felony." [6] *Id.* at 429.

In *People v. Taylor,* 112 Cal.App.3d 348, 169 Cal.Rptr. 290 (1980), the Court of Appeal of California for the Fifth Appellate District considered this argument in the context of the felony of drug distribution. Mr. Taylor had been drinking with the victim and others, and he gave the victim heroin. *Id.* at 293. The victim died several hours later. *Id.* at 294. Mr. Taylor was convicted of second degree felony murder, with furnishing heroin as the underlying felony. *Id.* at 293.

---

**6.** Professors Perkins and Boyce have explained this concept as follows:

> Homicide is within the felony-murder rule if it is within the "res gestae" of the initial felony. "The res gestae embraces not only the actual facts of the transaction and the circumstances surrounding it, but the matters immediately antecedent to and having a direct causal connection with it, as well as acts immediately following it and so closely connected with it as to form in reality a part of the concurrence."

ROLLIN M. PERKINS & RONALD N. BOYCE, CRIMINAL LAW 68–69 (3d ed.1982) (citations omitted).

Mr. Taylor argued, as appellant does here, that he could not "be convicted of second degree felony murder because the act of furnishing heroin was completed when he handed the heroin to [the victim] and thus the homicide was not committed in the perpetration of the felony." *Id.* at 295. The court rejected that argument, holding that "[i]t is sufficient under the felony-murder rule that the felony and the homicide are part of one continuous transaction." *Id.* The court continued: "There is no requirement that the homicide occur while committing or while engaged in the felony, or that the killing be part of the felony. It is sufficient that the homicide be related to the felony and have resulted as a natural and probable consequence thereof." *Id.*

█ We agree that a killing committed after the definitional elements of the predicate felony have been completed can qualify as felony murder. That appellant had distributed the drugs to Mr. Kohler does not automatically preclude a finding of felony murder.

The question then is what test should be applied to determine when a killing that follows a felony constitutes felony murder. This Court has recognized the requirement of a causal connection between the homicide and the felony, stating: " 'The killing must have had an intimate relation and close connection with the felony, and not be separate, distinct, and independent from it. . . . The death must have occurred as a result or outcome of the attempt to commit the felony.' " *Jackson v. State*, 87 Md.App. 475, 488, 590 A.2d 177 (1991) (quoting WHARTON, HOMICIDE § 126 at 184 (3d ed. 1907)).

In *Metheny*, 359 Md. at 624, 755 A.2d 1088, the Court of Appeals noted that other jurisdictions determine whether a killing qualifies as a felony murder by looking to whether the felony and the homicide were parts of a continuous transaction. *See State v. Buggs*, 995 S.W.2d 102, 106 (Tenn.1999) ("killing may precede, coincide with, or follow the felony and still be considered as occurring 'in the perpetration of' the felony offense, so long as there is a connection in time, place, and continuity of action"); *Montague v. Commonwealth*, 31

Va.App. 187, 522 S.E.2d 379, 381 (1999) ("Under the *res gestae* theory, the felony murder doctrine applies when the 'initial felony and the homicide [are] parts of one continuous transaction, and [are] closely related in point of time, place, and causal connection.'") (citation omitted), *aff'd,* 260 Va. 697, 536 S.E.2d 910 (2000).[7]

Other courts also look to whether there is a connection of time, place, and continuity of action, as well as causal connection, in determining whether a killing falls within the felony murder doctrine. *See, e.g., Bizup v. People,* 150 Colo. 214, 371 P.2d 786, 788 (affirming a conviction for felony murder because the killing and underlying robbery "were so closely connected in point of time, place and continuity of action as to be one continuous transaction."), *cert. denied,* 371 U.S. 873, 83 S.Ct. 144, 9 L.Ed.2d 112 (1962); *State v. Kunellis,* 276 Kan. 461, 78 P.3d 776, 788 (2003) ("We have stated that time, distance, and the causal relationship between the underlying felony and a killing are factors to be considered in determining whether the killing occurs during the commission of or flight from the underlying felony and, therefore, subject to the felony-murder rule."); *Gillis,* 712 N.W.2d at 432 (In order to determine whether a particular murder occurred within the *res gestae* of the predicate felony, "[c]ourts have usually required that the killing and the underlying felony be 'closely connected in point of time, place and causal relation.'") (quot-

---

7. In *Metheny v. State,* 359 Md. 576, 615–33, 755 A.2d 1088 (2000), the Court addressed, in the context of a death penalty case, whether a killing that occurred prior to a robbery was committed while in commission of the robbery, in the context of whether a statutory aggravating circumstance existed that made the defendant eligible for the death penalty. The Court undertook a survey of the law in other jurisdictions regarding the scope of the felony murder rule where the felony occurs as an afterthought following the killing. *Id.* at 623–24, 755 A.2d 1088. The Court noted that the majority of the states addressing the issue required that the intent to commit the felony must exist prior to the commission of the act causing the death, and it adopted this view for the determination of whether an aggravating circumstance existed to qualify for the death penalty. *Id.* at 630–31, 755 A.2d 1088. The Court of Appeals subsequently held that, for the felony murder rule to apply, the intent to commit the felony must precede the killing. *State v. Allen,* 387 Md. 389, 399–400, 875 A.2d 724 (2005).

ing *People v. Goddard,* 135 Mich.App. 128, 352 N.W.2d 367, 371 (1984)); *State v. Johnson,* 182 N.C.App. 63, 641 S.E.2d 364, 368 (murder can be found to be in course of a felony if " 'there is no break in the chain of events leading from the initial felony to the act causing death, so that the homicide is part of a series of incidents which form one continuous transaction.' ") (quoting *State v. Trull,* 349 N.C. 428, 509 S.E.2d 178, 192 (1998)), *review denied,* 361 N.C. 433, 649 S.E.2d 395 (2007).

■ We agree with this line of cases. We hold that a killing that follows a felony constitutes felony murder if the homicide and the felony were parts of one continuous transaction, and they were closely related in time, place, and causal relation.

Application of these factors here support appellant's conviction of second degree felony murder. The shooting occurred immediately after the drug deal, as the buyer fled after giving fake money in exchange for the drugs. The close relation in time and place between the two events was clear. The factors of continuity of action and causal connection also were established. In considering these factors, courts look to whether the killing was "part of an unbroken chain of events surrounding" the felony, *i.e.,* whether it occurred as part of the *res gestae* of the felony. *Gillis,* 712 N.W.2d at 437. Here, where the evidence showed that appellant ran after Mr. Kohler because Mr. Kohler did not provide the money agreed upon for the drugs, the shooting was a continued part of the drug deal, and it was causally related to the felony. The evidence was sufficient to support appellant's conviction for second degree felony murder.

## B. Jury Instruction

Appellant next argues that the court erred in its jury instruction regarding second degree felony murder, arguing that it failed to instruct the jury regarding an essential element of felony murder. Specifically, appellant argues that the court failed to instruct the jury that "the act resulting in

the death occurred during the commission or attempted commission or escape from the immediate scene of the distribution."

The State responds in several ways. Initially, it argues that appellant affirmatively waived his appellate complaint by declaring that he was satisfied with the jury instructions, and therefore, plain error review is not available to him. The State further argues that, "[e]ven were it available, plain-error review would be unwarranted because there was no error, much less the requisite 'blockbuster error' material to the verdict." It notes that the court used the Maryland Criminal Pattern Jury Instruction for second degree felony murder, and the use of a pattern jury instruction is favored. Finally, the State contends that the instruction was proper, asserting that "the relative timing of the felony and the killing is but a means to analyzing the deeper legal issue of causation," which the instruction properly addressed by advising that the jury must find that Ms. Worcester was killed "as a result of the way in which the distribution of marijuana was committed or attempted."

The trial court instructed the jury:

In order to convict [appellant] of second degree felony murder, the State must prove that the [appellant] or another participating in the crime with the [appellant] committed or attempted to commit the crime of distribution of marijuana, which is a felony. That the way in which the distribution of marijuana was committed or attempted under all of the circumstances created a reasonably foreseeable risk of death or a serious physical injury likely to result in death, and that as a result of the way in which the distribution of marijuana was committed or attempted, Shirley Elizabeth Worcester was killed.

After the court instructed the jury, it asked appellant's counsel if he had any objections to the instructions, and counsel replied: "None."

■ Maryland Rule 4–325(e) states: "No party may assign as error the giving or the failure to give an instruction unless

the party objects on the record promptly after the court instructs the jury, stating distinctly the matter to which the party objects and the grounds of the objection." *Accord Alston v. State,* 414 Md. 92, 111, 994 A.2d 896 (2010) ("Countless opinions of this Court have held that, when no timely objection to the jury instructions is made in the trial court, this Court ordinarily will not review a claim of error based on those instructions."). The " 'rules for preservation of issues have a salutary purpose of preventing unfairness and requiring that all issues be raised in and decided by the trial court, and these rules must be followed in all cases.' " *State v. Rich,* 415 Md. 567, 574 (2010) (quoting *Conyers v. State,* 354 Md. 132, 150, 729 A.2d 910 (1999)).

To be sure, we have discretion under Md. Rule 4–325(e) to address an unpreserved issue. That Rule states: "An appellate court, on its own initiative or on the suggestion of a party, may however take cognizance of any plain error in the instructions, material to the rights of the defendant, despite a failure to object."

■■■■ The Maryland appellate courts have made clear, however, that plain error review rarely should be exercised. As the Court of Appeals has explained:

> It is a discretion that appellate courts should rarely exercise, as considerations of both fairness and judicial efficiency ordinarily require that all challenges that a party desires to make to a trial court's ruling, action, or conduct be presented in the first instance to the trial court so that (1) a proper record can be made with respect to the challenge, and (2) the other parties and the trial judge are given an opportunity to consider and respond to the challenge.

*Chaney v. State,* 397 Md. 460, 468, 918 A.2d 506 (2007). *Accord Robinson,* 410 Md. at 104, 976 A.2d 1072 (appellate court's "prerogative to review an unpreserved claim of error, however, is to be rarely exercised and only when doing so furthers, rather than undermines, the purposes of the rule"). This Court has stated that " 'appellate review under the plain error doctrine 1) always has been, 2) still is, and 3) will

continue to be a rare, rare phenomenon.'" *Kelly v. State,* 195 Md.App. 403, 432, 6 A.3d 396 (2010) (quoting *Hammersla v. State,* 184 Md.App. 295, 306, 965 A.2d 912 (2009)), *cert. denied,* 417 Md. 502, 10 A.3d 1181, *cert. denied,* —— U.S. ——, 131 S.Ct. 2119, 179 L.Ed.2d 912 (2011).

The Court of Appeals has set forth four steps of analysis for a request for plain error review:

> First, there must be an error or defect—some sort of "[d]eviation from a legal rule"—that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it "affected the outcome of the district court proceedings." Fourth and finally, if the above three prongs are satisfied, the court of appeals has the discretion to remedy the error—discretion which ought to be exercised only if the error " 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.' " Meeting all four prongs is difficult, "as it should be."

*Rich,* 415 Md. at 578, 3 A.3d 1210 (quoting *Puckett v. United States,* 556 U.S. 129, 129 S.Ct. 1423, 1429, 173 L.Ed.2d 266 (2009)).

Before addressing whether to exercise our discretion to engage in plain error review of appellant's claim, we must address the State's claim that appellant cannot seek such review. The State argues that appellant, by stating that he had no objections to the instructions, "affirmatively waived" review of his jury instruction complaint. The State asserts that, "[u]nlike a claim beset by mere forfeiture, which this Court may choose to review for plain error, a claim beset by waiver cannot be reviewed at all." Thus, the State argues that plain error review is not available to appellant.

Appellant counters that "the State misconstrues the concept of waiver." He argues that, when considering "whether a defendant has waived his right to review, as opposed to having

forfeited it by failing to object," the inquiry is whether the defendant was aware of the abandoned right. Appellant argues that, "[t]here is no evidence that [appellant] was aware of the absence of a required element in the court's felony murder instruction but decided nonetheless to forgo an objection."

The Court of Appeals has explained the difference between a waiver and a forfeiture. A forfeiture involves a party's "failure to make a timely assertion of a right," whereas waiver is the "intentional relinquishment or abandonment of a known right." *Id.* at 580, 3 A.3d 1210 (quoting *United States v. Olano,* 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)). Forfeited rights are reviewable for plain error, whereas waived rights are not. *Id.* Accord *Carroll v. State,* 202 Md.App. 487, 509–10, 32 A.3d 1090, 1102–03 (2011).

In *Rich,* 415 Md. at 581, 3 A.3d 1210, the Court held that, where defense counsel made a specific request for an instruction on voluntary manslaughter, there was an intentional waiver of the right to argue on appeal that the evidence was insufficient to submit the issue of voluntary manslaughter to the jury. In the present case, counsel for appellant did not request specifically the instruction that the court gave on felony murder.

There was, however, acquiescence to the instruction. When the court inquired, at the conclusion of the instructions, whether counsel had any objections, counsel said: "None." We do not view this as an affirmative waiver of his right to challenge the jury instruction. Rather, his failure to object constituted a forfeiture of his right to raise the issue on appeal, but it did not preclude this court from deciding whether to exercise its discretion to engage in plain error review. *See United States v. Broadnax,* 601 F.3d 336, 347 (5th Cir.) (no cases found stating that agreement to jury instructions constitutes waiver of error in the instructions, but rather, such an agreement generally found to constitute a forfeiture subject to plain error review), *cert. denied,* ——— U.S. ———, 131 S.Ct. 207, 178 L.Ed.2d 124 (2010).

■ Thus, plain error review is available to appellant if this Court chooses to exercise its discretion to undertake such review. We decline, however, to do so in this case.

We note that the instruction that the court gave was MPJI–CR 4.17.7.2(B). Although the use of a pattern jury instruction does not insulate a conviction against review, it is a factor in our analysis. This Court has recommended that trial judges use the pattern instructions. *See Minger v. State*, 157 Md. App. 157, 161 n. 1, 849 A.2d 1058 (2004) ("Appellate courts in Maryland strongly favor the use of pattern jury instructions"); *Green v. State*, 127 Md.App. 758, 771, 736 A.2d 450 (1999) (recommending that trial judges give pattern jury instructions). Appellant has not cited any case in which a Maryland appellate court has held that a trial court committed plain error in following this recommendation and giving, without objection, a pattern jury instruction.[8]

Other courts have listed the use of a pattern jury instruction as a factor weighing against plain error review. *United States v. Roach*, 502 F.3d 425, 439 (6th Cir.2007) ("We generally prefer the usage of the Sixth Circuit pattern jury instruction and 'its use will, in most instances, insulate a resulting verdict' from challenge on appeal.") (quoting *United States v. Clinton*, 338 F.3d 483, 488 (6th Cir.2003)), *cert. denied*, 553 U.S. 1006, 128 S.Ct. 2051, 170 L.Ed.2d 797 (2008); *United States v. Reff*, 479 F.3d 396, 402 (5th Cir.) ("We previously have stated that

---

**8.** Appellant cites several cases where a Maryland appellate court reversed a conviction based on a lower court's use of a pattern jury instruction, but none of those cases were decided on plain error review. *See Arthur v. State*, 420 Md. 512, 528, 24 A.3d 667 (2011) (reversing conviction based on trial court's refusal to grant defendant's request to modify the pattern jury instruction); *Green v. State*, 119 Md.App. 547, 564, 705 A.2d 133 (1998) (same); *Rajnic v. State*, 106 Md.App. 286, 297, 664 A.2d 432 (1995) (reversing conviction based on trial court's refusal to give defendant's requested instruction). Similarly, appellant cites several cases in which a Maryland appellate court reversed a conviction based on a plain error review of a lower court's jury instruction but none of those cases involved pattern jury instructions. *See State v. Brady*, 393 Md. 502, 509, 903 A.2d 870 (2006); *Richmond v. State*, 330 Md. 223, 236–37, 623 A.2d 630 (1993); *Dawkins v. State*, 313 Md. 638, 642, 651–52, 547 A.2d 1041 (1988).

the use of an unobjected-to pattern jury instruction rarely will rise to the level of plain error."), *cert. denied,* 551 U.S. 1139, 127 S.Ct. 2992, 168 L.Ed.2d 717 (2007); *Price v. State,* 725 So.2d 1003, 1058 (Ala.Crim.App.1997) ("A trial court's following of an accepted pattern jury instruction weighs heavily against any finding of plain error."), *aff'd,* 725 So.2d 1063 (Ala.1998), *cert. denied,* 526 U.S. 1133, 119 S.Ct. 1809, 143 L.Ed.2d 1012 (1999).

■ We agree and hold that the circuit court's use of a pattern jury instruction, without objection, weighs heavily against plain error review of the instructions given. We decline to exercise our discretion to engage in plain error review in this case.

## III.

### Use of a Handgun Charge

■ Appellant's final contention is that the evidence was insufficient to support his convictions for use of a handgun in a commission of a felony and use of a handgun in the commission of a violent crime. Specifically, he argues that the "State failed to demonstrate beyond a reasonable doubt that the firearm used in the shooting was a handgun," as opposed to a firearm not covered by the statute. Appellant states:

No gun or bullets were recovered during the investigation, and there was no evidence presented at trial regarding the recovery of any weapon. The sum total of the evidence regarding the firearm consisted of two shell casings collected at the scene and the testimony of witnesses Ronald Long and Christopher Jagd.

The State contends that this contention is not preserved for appellate review. Even if preserved, it asserts, the contention is devoid of merit.

It is illegal in Maryland for a person to use "any handgun in the commission of a crime of violence ... or any felony." Md.Code (2002 Repl. Vol., 2008 Supp.) § 4–204(a) of the Criminal Law Article ("C.L."). A "handgun" "means a pistol,

revolver, or other firearm capable of being concealed on the person," including any rifle or shotgun as long as it is short-barreled. C.L. § 4–201(c), "Short-barreled" means, in the case of a rifle, less than 16″ long in barrel or 26″ in total length, and, in the case of a shotgun, less than 18″ long in barrel or 26″ in total length. C.L. § 4–201(f)–(g).

 We address first the State's argument that appellant's contention is not preserved for our review. As the State notes, "[i]t is well settled that 'appellate review of the sufficiency of the evidence in a criminal case tried by a jury is predicated on the refusal of the trial court to grant a motion for judgment of acquittal.'" *Starr v. State*, 405 Md. 293, 302, 951 A.2d 87 (2008) (quoting *Lotharp v. State*, 231 Md. 239, 240, 189 A.2d 652 (1963)). When making a motion for judgment of acquittal on one or more counts, a defendant must "state with particularity all reasons why the motion should be granted." Md. Rule 4–324(a). The "failure to particularize the reasons for granting a motion for judgment of acquittal in accordance with the rule's requirements necessarily would result in a failure to preserve the issue for appellate review." *Muir v. State*, 308 Md. 208, 219, 517 A.2d 1105 (1986).

In appellant's initial motion for judgment of acquittal, counsel made specific arguments regarding the charges of second degree felony murder, first degree murder, and first degree assault. With respect to the remaining counts, counsel stated that he "would just submit generally."

At the conclusion of all the evidence, counsel adopted his earlier arguments and stated that the evidence was insufficient to submit the case to the jury because the State's main witnesses were lying. He reiterated his argument that there was not sufficient evidence of felony murder because the drug distribution had concluded prior to the killing. Counsel then stated:

> In reference to the other charges, there again, I would submit that there's insufficient evidence to send this case to the jury. There's been-there's certainly insufficient evidence to show first degree murder, the deliberately premed-

itated malice aforethought, even assuming the argument is transferred intent. . . .

Under the State's direct evidence direct case, there's no evidence at all, because Mr. Jagd indicated he didn't see the shooter. No one else that the State produced as a witness indicated that they saw my client shoot Mr. Kohler or anyone else. It was only under cross examination by [Mr. Kohler's counsel] that the evidence came out and, therefore, I'd submit that that is insufficient for the jury to find guilt beyond a reasonable doubt.

There is no scientific evidence produced by the State to show that Mr. Yates fired any weapon at all period and, therefore, I would submit that there is insufficient evidence to send that to the jury, and I'd move for judgment of acquittal on all the charges.

We agree with the State that appellant's argument was insufficient to put the trial court on notice that he was arguing, as he does on appeal, that there was insufficient evidence to find that the weapon fired was a handgun, "as opposed to a rifle or other firearm not covered by [the statute]." Appellant's contention regarding the sufficiency of the evidence that the gun used was a handgun is not preserved for our review.

**JUDGMENTS AFFIRMED. COSTS TO BE PAID BY APPELLANT.[9]**

---

9. Our resolution of this appeal and assessment of costs to appellant renders moot the State's motion to strike portions of appellant's appendix. *Raynor v. State,* 201 Md.App. 209, 233 n. 8, 29 A.3d 617 (2011) (citing *Eiland v. State,* 92 Md.App. 56, 102–03, 607 A.2d 42 (1992)).