Reversed by Supreme Court, May 26, 2009

PUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.                                        No. 07-4639

SALMAN KHADE ABUELHAWA,
            *Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Leonie M. Brinkema, District Judge.
(1:07-cr-00018-LMB)

Argued: March 19, 2008

Decided: April 25, 2008

Before WILLIAMS, Chief Judge, SHEDD, Circuit Judge, and
William L. OSTEEN, Jr., United States District Judge
for the Middle District of North Carolina, sitting by designation.

Affirmed by published opinion. Chief Judge Williams wrote the opinion, in which Judge Shedd and Judge Osteen joined.

## COUNSEL

**ARGUED:** Timothy Joseph McEvoy, ODIN, FELDMAN & PITTLEMAN, P.C., Fairfax, Virginia, for Appellant. David Brian Goodhand, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee. **ON BRIEF:** Chuck Rosenberg, United States Attorney, Julie Warren, Special Assistant United States

Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

## OPINION

WILLIAMS, Chief Judge:

Salman Khade Abuelhawa appeals his conviction and sentence for violating 21 U.S.C.A. § 843(b) (West 1999), which prohibits knowingly or intentionally using a communication facility in committing, causing, or facilitating the commission of certain felonies, including drug distribution. Abuelhawa argues that he cannot be convicted of violating § 843(b) because the drug distribution in question was his purchase of cocaine for personal use, a misdemeanor, *see* 21 U.S.C.A. § 844(a)(1) (West 1999 & Supp. 2007). He also contests the sufficiency of the evidence supporting his conviction under § 843(b). Disagreeing with Abuelhawa on both counts, we affirm.

## I.

In early 2000, the Federal Bureau of Investigation ("FBI") began an investigation into possible cocaine distribution by Mohammed Said in the Skyline area of Virginia, just outside of Washington, D.C. During the course of this investigation, in June 2003, the FBI applied for, and was granted, a Title III warrant to wiretap Said's cell phone.[1] In this case, the wiretap captures "both phone numbers, . . . the time of the phone call, the date of the phone call, [and] the duration of the phone call," anytime a call, either incoming or outgoing, occurs between the wiretapped phone and another phone. (J.A. at 125.) Agents are also able to "intercept the conversation that occurs" between the two phones. (J.A. at 125.) The FBI can then subpoena a telephone company to identify the subscribers of telephones used to make contact with the wiretapped phone.

---

[1]The term Title III refers to the federal wiretapping statute (Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C.A. §§ 2510 *et seq.* (West 2000 & Supp. 2006)), which permits wiretapping by federal agents upon a showing of necessity. 18 U.S.C.A. § 2518 (West 2000).

In July 2003, FBI agents monitoring the wiretap of Said's cell phone issued a subpoena in an effort to identify the subscriber with the cell phone number 703-969-8743. From this subpoena, the FBI learned that the number belonged to Abuelhawa. Thereafter, the FBI monitored a series of calls between Said and Abuelhawa that form the basis of this appeal.

The wiretap recorded a total of eight calls between Abuelhawa and Said in early July 2003: the two men spoke twice on July 2, 2003, three times on July 5, and three times on July 12.[2] On July 2, at approximately 10:12 p.m., Abuelhawa called Said and instructed: "Bring me the half by the Hilton or do you want me to come to you?" (J.A. at 318.) An FBI agent as well as an expert witness testified that Abuelhawa's reference to "the half," was to a half gram of cocaine. Said called Abuelhawa back at 10:20 p.m. Said asked Abuelhawa, "Where are you?," to which Abuelhawa replied, "I am coming to you." (J.A. at 319.) The call ended with Abuelhawa saying "I have seen you." (J.A. at 319.)

On July 5, 2003, the wiretap intercepted three additional calls between Abuelhawa and Said, beginning at 10:12 p.m. In the first call, Abuelhawa asked for "[o]ne of the small, 100 type," continuing, "[l]ike, like that time when you and I, when I saw As'ad."[3] (J.A. at 320.) Said answered, "Ah. Ok." (J.A. at 320.) Abuelhawa continued, "But please for God's sake, fix it well. May God keep you." (J.A. at 320.) Said responded, "Alright. Alright. Where?" (J.A. at 320.) Abuelhawa reported that he was still at home, and Said instructed Abuelhawa to "[w]ait for me in Skyline until I come back [from picking up my sister]." (J.A. at 320.) The Government's expert witness testified that the reference to the "100 type" was a reference to one gram of cocaine, which has a retail value between $80-$120.

At 11:17 p.m., Said called Abuelhawa to ask his whereabouts. Abuelhawa responded that he was "almost in the neighborhood" and asked to meet "[b]y the Eleven." (J.A. at 322.) Said responded, "No.

---

[2]These conversations took place primarily in Arabic and were translated by a Government Arabic language specialist prior to trial. Neither party contests the accuracy of the translations.

[3]As'ad was the name of Mohammed Said's father.

No. Meet me out on the street that is after it. . . . In front of the street from where you are talking to me." (J.A. at 322.) Abuelhawa responded, "Fine. Ok." (J.A. at 322.) Four minutes later, at 11:21 p.m., Said again called Abuelhawa and asked, "Have your excellency arrived?" (J.A. at 323.) Abuelhawa responded, "I have arrived man. . . . but there are two people at that . . . so I drove down a little further." (J.A. at 323.) Said and Abuelhawa discussed this latest development for a moment, with Said instructing Abuelhawa to "go further down" because "[i]t is better." (J.A. at 323.) Abuelhawa responded, "Fine. Ok," and Said said, "Alright." (J.A. at 323.) No further phone calls were intercepted on July 5.

Finally, on July 12, the FBI intercepted three calls between Said and Abuelhawa. First, at 8:30 p.m., Abuelhawa called Said and asked, "Where did the free stuff go? Is it gone?" (J.A. at 324.) Said responded in the affirmative, and Abuelhawa said, "We should celebrate that it is gone. It was good." (J.A. at 324.) Abuelhawa continued, "May God give you health. So will I see you after an hour?" (J.A. at 324.) Said said, "[A]lright," and then he asked, "How much do you need?" (J.A. at 324.) Abuelhawa responded, "A half." (J.A. at 324.)

At 9:18 p.m., Abuelhawa called Said again, and said, "Ok. Listen. Make it one of the big ones. The 100 type." (J.A. at 326.) Said assented and asked Abuelhawa when he would arrive; Abuelhawa responded, "I am, I am on my way. I am leaving home." (J.A. at 326.) The two men then agreed to meet at Said's "store." (J.A. at 326.) At 9:47 p.m., another call occurred between Said and Abuelhawa. (J.A. at 327.) Said asked where Abuelhawa was; Abuelhawa responded, "Right here. I am, I am coming to you in two minutes." (J.A. at 327.) Said expressed his desire to leave the shop, stating, "I really want to leave this place." (J.A. at 327.) Abuelhawa pleaded, "I am coming to you man. One minute." (J.A. at 327.) Said relented and told Abuelhawa, "Come. Meet me at the grill. Ok. Bye." (J.A. at 327.) At trial, testimony from the Government established that Said's father owned the Skyline butcher shop and a restaurant called the Skyline Grill, which were located next door to each other. An FBI agent further testified that the Skyline Grill "is a location where Mohammed Said distribute[d] cocaine." (J.A. at 148.)

Based upon these intercepted telephone calls, Abuelhawa was placed under arrest at his home on October 17, 2003. After being advised of his *Miranda* rights, Abuelhawa agreed to speak with the FBI agents who arrested him and admitted that he purchased cocaine from Said and a dealer named Issam Khatib. Abuelhawa told the agents that he originally purchased cocaine, usually in one-half gram amounts, from Khatib and that Said became his dealer after Khatib left the business and Said assumed control of Khatib's customer base. Abuelhawa further told the agents that he used his cell phone to call Said's cell phone in order to buy cocaine in one-half gram amounts and that he and Said would usually meet outside of the Skyline Grill to complete the drug transactions. Said would hand the cocaine, in a tin-foil package, to Abuelhawa through Abuelhawa's car window. Abuelhawa gave no statements indicating that he purchased cocaine on the specific dates of July 5 and July 12.

On January 25, 2007, a federal grand jury sitting in the Eastern District of Virginia charged Abuelhawa in a seven-count indictment with violating 21 U.S.C.A. § 843(b) and 18 U.S.C.A. § 2 (West 2000). The indictment charged Abuelhawa with unlawfully, knowingly, and intentionally using a communications facility—a telephone —in committing, causing, and facilitating the commission of a violation of 21 U.S.C.A. § 841(a)(1) (West 1999), distribution of cocaine. Counts Two through Four alleged violations of § 843(b) based upon the three July 5th phone calls, while Counts Five through Seven focused on the three July 12th calls. Count One, which was dismissed prior to trial for reasons not relevant to the appeal, focused on a phone call made on June 29, 2003.

Following the close of the Government's case-in-chief, Abuelhawa moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29. The district court denied the motion, explaining:

> You may be right on the July 5 incidents. If that's all the government had, if they only had one set of conversations, I think I'd be granting your motion, but you have a week later a second round of conversations, and it seems to me it's not an unreasonable inference to draw the conclusion that if the first set of transactions had been unsuccessful,

you'd have either heard some complaints or something in the second round.

(J.A. at 201-02.)

The jury thereafter convicted Abuelhawa on all six of the remaining counts in the indictment. Abuelhawa followed his oral Rule 29 motion with a later written one, which the district court denied prior to sentencing. The district court sentenced Abuelhawa to 24 months probation and a $2,000 fine.[4] Abuelhawa timely noted an appeal, and we possess jurisdiction under 28 U.S.C.A. § 1291 (West 2006) and 18 U.S.C.A. § 3742(a) (West 2000).

## II.

Abuelhawa pursues two arguments on appeal regarding his conviction. First, Abuelhawa contends that § 843(b) is not violated when an individual facilitates the purchase of a drug quantity for personal use. Second, Abuelhawa contends that, even assuming § 843(b) criminalizes such conduct, the Government produced insufficient evidence to show that a drug distribution occurred on either July 5 or July 12. We address each contention in turn.

## A.

Whether § 843(b) extends to personal-use distributions is a question of statutory interpretation, which we review *de novo*, *see United States v. Nelson*, 484 F.3d 257, 260 (4th Cir. 2007), and we "begin with the language of the statute," *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450 (2002). We first "determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997)). "Our inquiry must cease if the statutory language is unambiguous and 'the statutory scheme is coherent and consistent.'" *Robinson*, 519 U.S. at 340 (quoting *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 240 (1989)). "The plain meaning of legislation should

---

[4]At that time, the district court also merged the convictions for Counts 3 and 4 into Count 2, and the convictions for Counts 6 and 7 into Count 5.

be conclusive, except in the rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." *Ron Pair Enters.*, 489 U.S. at 242 (internal quotation marks omitted).

Section 843(b) makes it "unlawful for any person knowingly or intentionally to use any communication facility in committing or in causing or facilitating the commission of any act or acts constituting a felony under any provision of this subchapter or subchapter II of this chapter." 21 U.S.C.A. § 843(b). Abuelhawa was convicted of committing, causing or facilitating the commission of a violation of 21 U.S.C.A. § 841(a)(1), which criminalizes distribution of controlled substances.[5] This distribution, Abuelhawa notes, was for his personal use.

Because there is no dispute that Abuelhawa used a communication facility (a cell phone) to arrange the drug transactions, we believe this case can be decided by focusing only on whether Abuelhawa facilitated the commission of a felony. We begin with the recognition that our sister circuits are divided on the issue facing us; some find that when a communication facility is used to facilitate a drug sale for personal use, § 843(b) is not violated. *See United States v. Baggett*, 890 F.2d 1095, 1098 (10th Cir. 1990); *United States v. Martin*, 599 F.2d 880, 888-89 (9th Cir. 1979) *overruled on other grounds by United States v. DeBright*, 730 F.2d 1255 (9th Cir. 1984).[6] These circuits take

---

[5]Cocaine is a Schedule II controlled substance, covered by 21 U.S.C.A. § 841(a)(1) (West 1999).

[6]Abuelhawa also cites to *United States v. Van Buren*, 804 F.2d 888, 892 (6th Cir. 1986) in support of his position. In *Van Buren*, however, the Sixth Circuit addressed whether use of a telephone to purchase drugs for personal use furthered a drug *conspiracy*, not whether 21 U.S.C.A. § 843(b) (West 1999) extends to personal use distributions. Instead, it appears that the Sixth Circuit does not agree with Abuelhawa. *See United States v. McLernon*, 746 F.2d 1098, 1106 (6th Cir. 1984) ("To prove 'facilitation,' the government must show that the 'telephone call comes within the common meaning of facilitate-'to make easier' or less difficult, or to assist or aid. It is sufficient if a defendant's use of a telephone to facilitate the possession or distribution of controlled substances facilitates either his own or another person's possession or distribution.'" (quoting *United States v. Phillips*, 664 F.2d 971, 1032 (5th Cir. Unit B. Dec. 1981))).

the position that "a mere customer's contribution to the business he patronizes does not constitute the facilitation envisioned by Congress." *Martin*, 599 F.2d at 889. In contrast, other circuits have concluded that distributions for personal use are covered by § 843(b). *See United States v. Binkley*, 903 F.2d 1130, 1135-36 (7th Cir. 1990); *United States v. McLernon*, 746 F.2d 1098, 1106 (6th Cir. 1984); *United States v. Phillips*, 664 F.2d 971, 1032 (5th Cir. Unit B Dec. 1981) *overruled on other grounds by United States v. Huntress*, 956 F.2d 1309 (5th Cir. 1992).[7] The Seventh Circuit, in *Binkley*, noted the term "facilitate" "should be given its ordinary meaning, which is, simply, 'to make easier.'" *Binkley*, 990 F.2d at 1135 (quoting *Phillips*, 664 F.2d at 1032). *See also McLernon*, 746 F.2d at 1106 (same). And, by placing the focus on the *use* of a communications device to make a distribution easier, a defendant's "subsequent treatment of the cocaine cannot retroactively diminish [the defendant's] previous facilitation of . . . [a] cocaine sale." *Binkley*, 990 F.2d at 1136.

Although we have not adopted either position, we have previously indicated our agreement with *Phillips*, *McLernon*, and *Binkley* that, for purposes of § 843(b), "facilitate" should be given its "common meaning—to make easier or less difficult, or to assist or aid." *United States v. Lozano*, 839 F.2d 1020, 1023 (4th Cir. 1988) (internal quotation marks omitted). Faced directly with the issue confronted in those cases, we believe those circuits also have the better of the argument as to whether § 843(b) applies to facilitation of a drug distribution for personal use.

Section 843(b) has as its essential elements knowing or intentional use of a communication facility to commit, cause, or facilitate certain enumerated felonies. The statute does not specify *whose* felony must be at issue, just that "a" felony must be facilitated. Cocaine distribu-

---

[7] *United States v. Phillips*, 664 F.2d 971 (5th Cir. Unit B Dec. 1981) is binding precedent in both the Fifth and Eleventh Circuits. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1422 n.8 (5th Cir. 1996) (noting that all cases decided by Unit B panels of the Former Fifth Circuit are binding precedent in the Fifth Circuit); *Stein v. Reynolds Sec. Inc.*, 667 F.2d 33, 34 (11th Cir. 1982) (noting that decisions by Unit B panels of the Former Fifth Circuit are binding precedent in the Eleventh Circuit).

tion is a felony, 21 U.S.C.A. § 841(a)(1), and Abuelhawa's use of his cell phone undoubtedly made *Said*'s cocaine distribution easier; in fact, "it made the sale possible."[8] *Binkley*, 903 F.2d at 1136. The fact that Abuelhawa's possession of cocaine for personal use may not itself be a felony, 21 U.S.C.A. § 844(a)(1), is simply irrelevant under § 843(b). As the Seventh Circuit explained,

> If, by their use of the telephone, the appellants have made the distribution of the cocaine easier, they have facilitated it and violated the statute. What they do with the cocaine after it is distributed is irrelevant to whether they facilitated the distribution; the crime is complete long before they either use or dispose of the cocaine.

*United States v. Kozinski*, 16 F.3d 795, 807 (7th Cir. 1994) (internal citations omitted).

Abuelhawa believes this result is nonsensical because, if he had simply approached Said on the street and purchased one-half gram of cocaine, his conduct would be punishable only as a misdemeanor. Abuelhawa thus argues it is beyond logic that his use of a cell phone to contact Said transforms his possession offense into a felony. Congress, however, may well have had reason for such a result: use of communication facilities makes it easier for criminals to engage in their skullduggery, and Congress may reasonably have desired to increase criminal penalties for those who use such means to evade detection by law enforcement. At any rate, Abuelhawa's contention certainly fails to prove that our result is "demonstrably at odds," *Ron Pair Enters.*, 489 U.S. at 242 (internal quotation marks omitted), with congressional intent, best expressed in the plain language of § 843(b), which references only "a felony." 18 U.S.C.A. § 843(b).

We thus join the Fifth, Sixth, Seventh, and Eleventh Circuits in concluding that persons like Abuelhawa, who facilitate distribution of

---

[8]As one of our district courts has stated, "the decisions of the Fifth and Seventh Circuit appropriately focus on the defendant's use of a communication facility in the 'making easier' of the completion of any felony under the Controlled Substances Act." *United States v. Lewis*, 387 F. Supp.2d 573, 584 (E.D. Va. 2005).

a controlled substance to themselves for personal use by using a communication facility, can be prosecuted for violating § 843(b). Quite simply, "status as buyer[ ] or distributor[ ] is of no consequence regarding section 843(b); rather, [a defendant's] status as [a] facilitator[ ] alone gives rise to criminal liability." *Kozinski*, 16 F.3d at 807.

B.

In the alternative, Abuelhawa contends that the Government failed to prove a violation of § 843(b) in this case because it failed to show the occurrence of an actual drug distribution on either July 5 or July 12. Abuelhawa bears a "heavy burden" in contesting the sufficiency of the evidence supporting a jury verdict. *United States v. Beidler*, 110 F.3d 1064, 1067 (4th Cir. 1997) (internal quotation marks omitted). His conviction must be affirmed if, reviewing the evidence in the light most favorable to the Government, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *United States v. Burgos*, 94 F.3d 849, 862-63 (4th Cir. 1996) (en banc). The Government receives the benefit of "all reasonable inferences from the facts proven to those sought to be established." *United States v. Tresvant*, 677 F.2d 1018, 1021 (4th Cir. 1982) (citations omitted).

In contesting the sufficiency of the evidence, Abuelhawa focuses upon what he categorizes as lacking in the Government's case: the actual drugs, the absence of witness testimony or objective evidence that Abuelhawa and Said ever met on July 5 or July 12, and the lack of admissions from Abuelhawa that he purchased cocaine from Said on either July 5 or July 12. Abuelhawa points us to *Baggett*, in which the Tenth Circuit required the Government, in a prosecution for narcotics *possession*, to "put forth some evidence to show that [a defendant] actually possessed heroin on the day in question." *Baggett*, 890 F.2d at 1096.

In *Baggett*, the defendant was charged with possession of heroin on November 29, 1987. *Id.* The Government put forth evidence that the female defendant Baggett made three calls to a drug dealer on that day to purchase heroin and cocaine at a set location, that a female emerging from a car registered to Baggett was seen at that set location entering the drug dealer's car twice on November 29, and that in

March 1988 Baggett gave statements to the police that she used heroin during the month of November 1987. *Id.* In reversing Baggett's conviction, the Tenth Circuit proceeded, based upon our opinion in *United States v. Dolan*, 544 F.2d 1219 (4th Cir. 1976), to list several means by which the Government could prove actual *possession.*[9] *Baggett*, 890 F.2d at 1096. In *Dolan*, however, we addressed examples of evidence the Government could use to prove the *identity* of a substance in lieu of expert testimony. *Dolan*, 544 F.2d at 1221.

The Tenth Circuit read *Dolan* for the broader proposition that "[i]f the prosecution is not going to present direct evidence of drug possession, its circumstantial evidence must include some testimony linking defendant to an observed substance that a jury can infer to be a narcotic." *Baggett*, 890 F.2d at 1097. *See also United States v. Hall*, 473 F.3d 1295 (10th Cir. 2007) ("While other courts have not gone so far as to require that evidence include an 'observed substance that a jury can infer to be a narcotic,' there is little doubt that a defendant's own inculpatory statements captured on wiretaps must be corroborated by other circumstantial evidence of possession such that a jury may properly infer the specific drug was actually possessed.").

While the Tenth Circuit may have extended *Dolan*'s inexhaustive list for proving a substance's identity into a rigid proof requirement

---

[9]The Tenth Circuit quoted from the following passage from *United States v. Dolan*, 544 F.2d 1219 (4th Cir. 1976):

> [L]ay testimony and circumstantial evidence may be sufficient, without the introduction of an expert chemical analysis, to establish the identi[t]y of the substance involved in an alleged narcotics transaction. Such circumstantial proof may include evidence of the physical appearance of the substance involved in the transaction, evidence that the substance produced the expected effects when sampled by someone familiar with the illicit drug, evidence that the substance was used in the same manner as the illicit drug, testimony that a high price was paid in cash for the substance, evidence that transactions involving the substance were carried on with secrecy or deviousness, and evidence that the substance was called by the name of the illegal narcotic by the defendant or others in his presence[.]

*Id.* at 1221 (internal citations omitted).

for all charges of narcotics possession, we decline to do so. We have never placed such a burden on the Government, and "we decline to give a checklist or formula for sufficiency." *United States v. Bryce*, 208 F.3d 346, 353 (2d. Cir. 2000).

Instead, when "we look at what facts *did* exist in this case," *United States v. McCoy*, 513 F.3d 405, 412 (4th Cir. 2008), we conclude the Government produced sufficient evidence of a completed distribution on both July 5 and July 12. To prove these offenses, the Government put forth three phone calls on both July 5 and July 12 orchestrating drug transactions between Abuelhawa and Said. All three calls took place in short time frames, setting up the exact details of the transaction. No calls were made indicating the transactions failed, and the July 12 phone calls make no mention that the July 5 transaction was not consummated. Expert testimony explained that Abuelhawa used "code words" during the calls indicating his desire to purchase one-half gram and one gram amounts of cocaine. Abuelhawa told investigators that he normally purchased cocaine in one-half gram amounts from the Skyline Grill, the business mentioned in the final call on July 12. We think from this evidence, including the confirmatory statements from Abuelhawa that he purchased cocaine from Said, a reasonable jury could infer that Said completed a distribution on both July 5 and July 12.

In particular, a reasonable jury could infer that had Said not in fact distributed cocaine to Abuelhawa on July 5 after indicating that he was on the very street where he and Said were scheduled to meet, one of them might have mentioned the failed transaction in the July 12 calls. As to July 12, the final call concludes with Abuelhawa stating that he is "[o]ne minute" away from Said, (J.A. at 327), and Said agreeing to meet Abuelhawa at the Skyline Grill, where Abuelhawa later admitted was his normal destination for cocaine purchases. Again, viewing this evidence in the light most favorable to the Government, and drawing all reasonable inferences in its favor, we believe a reasonable jury could certainly have found Abuelhawa guilty of violating § 843(b) for facilitating Said's cocaine distribution on July 12 as well. Given the immediacy of the final call between Abuelhawa and Said, a reasonable jury could conclude that, if the transaction was not consummated, a further call would have been made.

Much of Abuelhawa's argument focuses on the Government's presentation of only circumstantial evidence to support its case. We have explained that "as a general proposition, circumstantial evidence may be sufficient to support a guilty verdict even though it does not exclude every reasonable hypothesis consistent with innocence." *United States v. Osborne*, 514 F.3d 377, 387 (4th Cir. 2008) (alteration and quotation marks omitted). With this proposition in mind, and under our deferential standard of review, we conclude that the Government provided sufficient evidence to support the jury's verdict.

## III.

Because we hold that § 843(b) criminalizes facilitation of drug distributions for personal use, and that the Government adduced sufficient evidence that Abuelhawa violated § 843(b) on July 5 and July 12, Abuelhawa's conviction and sentence must be and is

*AFFIRMED*.