36 A.3d 1013

**Donald Stewart KOHLER**

v.

**STATE of Maryland.**

**No. 2150, Sept. Term, 2009.**

Court of Special Appeals of Maryland.

Feb. 2, 2012.

112

Peter F. Rose (Paul B. DeWolfe, Public Defender, on the brief), Baltimore, MD, for appellant.

Carrie J. Williams (Douglas Gansler, Atty. Gen., on the brief), Baltimore, MD, for appellee.

Panel: EYLER, JAMES, R., WRIGHT, JAMES P. SALMON (Retired, Specially Assigned), JJ.

JAMES P. SALMON (Retired, Specially Assigned), J.

After using mostly fake money to purchase marijuana, Donald Kohler immediately fled from the seller, Warren Jerome Yates. Upon discovering the deception, Yates ran after Kohler and fired a shot that killed Shirley Worcester, an innocent bystander. Based on the State's theory that Kohler aided and abetted Yates's felony distribution of marijuana, a jury in the Circuit Court for Baltimore County convicted Kohler of second-degree felony murder and conspiracy to distribute marijuana.[1] He was also convicted of possession of marijuana with intent to distribute. Kohler was sentenced to thirty years for the felony murder, five consecutive years for the conspiracy, and a concurrent five years on the possession charge. In this appeal Kohler does not take issue with his conviction of possession with intent to distribute marijuana but claims that the evidence was insufficient to sustain his conviction for either second-degree felony murder or conspiracy to distribute marijuana.

The question of whether the evidence was sufficient to support appellant's conviction for felony murder presents an issue of first impression. No reported Maryland appellate case addresses whether a buyer of a controlled dangerous substance ("CDS") may be convicted of distribution based on the theory that he or she "participated" in the sale as a second degree principal, i.e., as an aider or abettor of the distribution. Consequently, there is no reported Maryland case that addresses the felony murder question now before us—whether a

---

1. This Court recently affirmed Yates's convictions, rejecting, *inter alia*, his argument that the evidence was insufficient to convict him of felony murder because "the conduct resulting in the victim's death did not occur during the commission of the underlying felony[.]" *See Yates v. State*, 202 Md.App. 700, 704, 33 A.3d 1071 (2011).

drug buyer, whose actions toward the seller in the course of the transaction precipitated the seller's murder of an innocent victim, may be convicted of second degree felony murder.[2]

For the reasons explained below, we conclude that the evidence presented by the State was insufficient to convict appellant of distributing marijuana, and therefore also insufficient to convict him of felony murder and conspiracy to distribute marijuana.

## I.

## FACTS

Evidence considered by the jury that convicted Kohler, viewed in the light most favorable to the State (see Maryland Rule 4–324), is summarized below.[3]

On the morning of January 7, 2009, Kohler met Christopher Jagd and Justin Wimbush at a house in Baltimore County where Johnny Moore lived. Kohler said to Jagd and Wimbush that he would like to steal some marijuana. Kohler inquired of Jagd and Wimbush if they knew anyone who might have "some pounds" of marijuana. Wimbush said that he needed to "make some calls" but believed "he could get it." Wimbush and Jagd then left. Later that day Wimbush, acting on Kohler's behalf, called Warren Yates and the two negotiat-

---

**2.** In *Heckstall v. State*, 120 Md.App. 621, 626, 707 A.2d 953 (1998), for example, the issue was whether a *seller* could be convicted of conspiracy to distribute heroin, in addition to distribution of heroin, based solely on evidence that he accepted cash from a buyer and immediately handed the money to a companion. Observing that "standing alone, a single buyer-seller transaction ordinarily does not constitute a conspiracy[,]" *id.*, this Court held that there was insufficient evidence of a conspiracy because there was no evidence of "advanced planning among the co-conspirators" and the alleged co-conspirator had been acquitted of conspiracy. *Id.* at 627, 707 A.2d 953. Here, because appellant was a buyer who purchased with intent to distribute, not a seller who distributed, *Heckstall* is factually and legally inapposite.

**3.** The summary set forth in Part I includes only facts germane to the issues raised in this appeal.

ed the sales price ($1,100.00 per pound) and the quantity of marijuana to be sold (four pounds). Wimbush and Yates then made arrangements concerning the time and place of the delivery. Ultimately it was agreed that the sale would occur at the townhouse on South Hawthorn Street where Johnny Moore lived.

On the evening of January 7, 2009, Yates, accompanied by Billy Griffin, arrived at the townhouse in Yates's car. Yates and Griffin entered the basement of Johnny Moore's house where they joined Jagd, Wimbush and others. Kohler stayed upstairs. He told Jagd that he wanted to see the marijuana before he bought it. Griffin gave Jagd a pound of marijuana, Jagd then gave the pound to Wimbush who went upstairs and showed it to Kohler. Kohler then asked to see all four pounds, but his request was denied by Yates. Finally, tired of waiting, Griffin and Yates announced they were leaving and went upstairs.

Just as Griffin and Yates were about to leave, Kohler said that he still wanted to buy the drugs. The marijuana was given to Jagd. Jagd handed the drugs to Wimbush, who gave the contraband to Kohler. Kohler, in turn, gave Wimbush a bag with money in it. The bag went to Jagd, who gave it to Yates.

Yates told everyone not to leave until he counted the money, but as soon as Jagd handed over the bag, Kohler grabbed the drugs and ran out the door. Yates immediately reported to Griffin that the money Kohler gave to him in exchange for the drugs was fake.[4] Yates then chased after Kohler. During the chase Yates fired two shots, intending to hit Kohler. Kohler was not hit but one of the bullets went astray and killed Shirley Worcester, who happened to be standing nearby.

---

4. Griffin later saw the fake money. It was in a roll of bills. The "bills" were cut to the same width and length of legitimate U.S. currency and real U.S. currency was wrapped around the outside of the fake currency. Almost all the "bills" in the roll were counterfeit.

## II.

## Discussion

### A. Second Degree Felony Murder

Challenging the State's theory that appellant abetted Yates in his distribution of marijuana, appellant argues that his second degree felony murder conviction must be reversed because the evidence was insufficient to convict him of the predicate felony of distribution. In support, appellant points out that, at trial, the State's theory was not that appellant distributed the marijuana to others, but that appellant was "a participant" in the sale of marijuana by Yates because appellant was "the buyer" who "received it." In appellant's view, the State's "participant" argument "demonstrates its concession" that appellant did not distribute marijuana.[5]

The State maintains that "[u]nder the unique facts of this case, ... the evidence was sufficient to convict [appellant] of

---

**5.** When appellant moved for acquittal on the ground that the State did not prove the underlying felony of marijuana distribution, the prosecutor responded as follows:

> [Prosecutor]: But the issue is whether or not he's a participant in the crime, and he is unquestionably a participant in the distribution of marijuana. He is the buyer. He received it. The distribution would not have occurred but for the fact that he is there to take it. He is a willing and knowing participant in the distribution of marijuana. And that's what the issue is for second degree common law felony murder and even people that are participants.
>
> The Court: Are there any cases which would describe ... a buyer as a participant in the crime of distribution?
>
> [Prosecutor]: I don't know. I don't have any. The issue is whether or not you were a participant. There are two questions there. *Are you guilty of distribution of marijuana?* **Probably not.** But are you a participant in the crime? Technically, I guess a victim of a robbery is a participant in the crime, but they're not a knowing and willing participant. They're not part of the crime.
>
> But clearly he is a knowing and willing participant in the distribution of marijuana. *You can't walk from your responsibility for what happens in a distribution by asserting that you're not the person actually distributing,* **because obviously you're not** but it would not have happened but for you precedence [sic] but for your response, but for your desire to allegedly purchase the marijuana in and of itself in the first place.

(Emphasis added.)

distribution of marijuana and of the felony murder." On appeal the State renews its trial argument that appellant "participated in the distribution ... as a second degree principal" who aided and abetted the transaction by seeking "out Yates, inquir[ing] as to whether he could purchase four pounds of marijuana, set[ting] up the details of the exchange, and, ultimately, fraudulently entic[ing] Yates to relinquish possession of the marijuana." Of significance, the State argues, is the fact that appellant's "intent to defraud Yates and essentially trick him into transferring the drugs" was what ultimately led to the shooting of Ms. Worcester. As the trial court pointed out at sentencing, "but for Mr. Kohler's actions in seeking to have these drugs sold to him and all of the machinations about which we heard during the trial and his decision to effectuate the purchase in the way that he did[,]" "the victim in this case would not have been killed[.]" In these limited circumstances, the State posits, a buyer like appellant, who "takes an active role in soliciting the distributor and arranging the transaction," which "is occurring in the middle of the distribution chain, and not between the seller and user, ... could be guilty of distribution."

"When reviewing the sufficiency of the evidence to sustain appellant's convictions, we must determine, after viewing the evidence in the light most favorable to the State, if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Yates v. State*, 202 Md.App. 700, 712, 33 A.3d 1071 (2011) (internal quotation marks and citations omitted). In Maryland, second degree felony murder is a common law crime premised on "the principle that a person participating in a felony is responsible for the natural and probable consequences of his or her criminal activity."[6] *Roary v. State*, 385 Md. 217, 231, 236, 867

---

**6.** First degree felony murder is a statutory offense. *See generally* Md.Code (2002), § 2–201(a)(4) of the Criminal Law Article ("[a] murder is in the first degree if it is ... committed in the perpetration of or an attempt to perpetrate" a list of enumerated crimes, including arson, burglary, carjacking, prison escape, kidnapping, rape and other sexual offenses, or robbery).

A.2d 1095 (2005). *See Yates, supra,* at 712–13, 33 A.3d 1071. "The modern felony-murder rule is 'intended to deter dangerous conduct by punishing as murder a homicide resulting from dangerous conduct in the perpetration of a felony, even if the defendant did not intend to kill.'" *Roary,* 385 Md. at 226–27, 867 A.2d 1095 (citation omitted). "To obtain a conviction for felony murder, the State is required to prove the underlying felony and that the death occurred during the perpetration of the felony." *Id.* at 227, 867 A.2d 1095. Moreover, "the underlying felony must be sufficiently dangerous to life to justify application of the doctrine," so that the jury must be able to find beyond a reasonable doubt that "the felonious conduct, under all the circumstances, made death a foreseeable consequence[.]" *Id.* at 229, 867 A.2d 1095. It is not necessary, however, for the State to separately charge the defendant with the predicate felony. *Id.* at 227, 867 A.2d 1095.

 Maryland does not have an "aiding and abetting" statute. Nevertheless, under established case law, a person who did not actually commit the crime in question may nevertheless be guilty to the same degree as the person who did. *Handy v. State,* 23 Md.App. 239, 250, 251–52, 326 A.2d 189 (1974). Whereas principals in the first degree "commit the deed as perpetrating actors, either by their own hand or by the hand of an innocent agent," principals in the second degree are "present, actually or constructively, aiding and abetting the commission of the crime, but not themselves committing it[.]" *Id.* at 251, 326 A.2d 189 (citations omitted). "An aider is one who assists, supports or supplements the efforts of another in the commission of a crime." *Id.* "An abettor is one who instigates, advises or encourages the commission of a crime." *Id.*

Here, the State charged appellant with conspiring with Yates and Griffin to distribute marijuana in violation of the statutory prohibition against distributing marijuana and with possession of marijuana with the intent to distribute, which is a statutory felony. *See generally* Md.Code (2002), § 5–602(1) of the Criminal Law Article ("Crim.") ("a person may not . . .

distribute or dispense a controlled dangerous substance"); Crim. § 5–602(2) ("a person may not . . . possess a controlled dangerous substance in sufficient quantity reasonably to indicate under all circumstances an intent to distribute or dispense a controlled dangerous substance"); Crim. § 5–607(a) ("a person who violates a provision of §§ 5–602 through 5–606 of this subtitle is guilty of a felony"). *Cf. Rudder v. State*, 181 Md.App. 426, 434, 956 A.2d 791 (2008) (conspiracy is a common law misdemeanor); Crim. § 1–102 ("The punishment of a person who is convicted of conspiracy may not exceed the maximum punishment for the crime that the person conspired to commit.").

Although appellant was not charged with distribution in violation of Crim. § 5–602(1), the State argued throughout trial that the second degree felony murder charges against both appellant and Yates were predicated on distribution, and that appellant was guilty of distribution as a second degree principal, based on his role in arranging the sale and receiving the marijuana from Yates.[7] Defense counsel argued to the trial court, in support of his unsuccessful motions for acquittal, and to the jury in closing, that appellant could not be guilty of distribution or felony murder because a buyer cannot be convicted of distributing marijuana to himself.[8]

---

**7.** As the State asserts in its brief, "the prosecutor made clear in his rebuttal closing argument that it was the State's theory that Kohler was guilty of distributing marijuana[,]" as evidenced by the following argument:

> [Defense counsel] chooses to make it into the issue of selling instead of saying distributing. He says it's sell[ing] marijuana. Nowhere in your instructions does it require the marijuana to be sold. He wants to change it to that word, because he wants to distinguish between selling and buying, and he wants to make his client, the buyer, he is, but he's also involved in the distribution. In order for distribution to happen, it has to go from one person to another. . . . So, how can you distribute without someone to take it? And that's Donald Kohler. And clearly they have, they have a meeting of the minds, although people in between to help them through that to engage in the distribution of marijuana.

**8.** Defense counsel unequivocally staked appellant's defense to the felony murder charge on the argument that, as a mere buyer, appellant was

The trial court instructed the jury that "the State must prove that the Defendant[,] or another participating in the crime with the Defendant[,] committed or attempted to commit the crime of distribution of marijuana, which is a felony."[9] The court did not define "distribution" or further explain who might qualify as "another participating in the crime with the Defendant[.]"

In this Court, appellant points out that the Supreme Court unanimously rejected an analogous "drug buyer as facilitator" theory in *Abuelhawa v. United States,* 556 U.S. 816, 129 S.Ct. 2102, 2105, 173 L.Ed.2d 982 (2009), and that courts in other states have similarly rejected the notion that a buyer can be convicted of CDS distribution as a second degree principal. We agree that these cases are instructive.

In *Abuelhawa,* the issue was whether a *buyer's* use of his cell phone to arrange drug purchases "facilitated" the seller's felony drug distribution, in violation of a federal statute criminalizing the use of communication devices in "facilitating the

---

not guilty of the predicate felony of distribution. In closing, counsel argued:

> Can the buyer distribute? What [the prosecutor] told you is that the answer is yes, he's part of the distribution by being the buyer. You can't distribute if there's nobody to distribute to. That was his argument.
>
> I would suggest to you that's not what that means when it says that the person has to distribute. You can't distribute to yourself. The definition that the Judge gave you of distribution is to transfer an interest to another person. How can the buyer be guilty of distributing to someone else when it's being distributed to him?
>
> So I would suggest for that reason that the State has failed to prove that Mr. Kohler . . . even if we assume it's the right person, I would suggest to you they didn't prove the distribution, they proved that he was a buyer.

**9.** The remainder of the trial court's instruction on second degree felony murder is as follows:

> That the way in which the distribution of marijuana was committed or attempted under all of the circumstances created a reasonably foreseeable risk of death or a serious physical injury likely to result in death, and that as a result of the way in which the distribution of marijuana was committed or attempted, Shirley Elizabeth Worcester was killed.

commission of ... a felony[.]" *See Abuelhawa*, 129 S.Ct. at 2104; 21 U.S.C. § 843(b). A unanimous Supreme Court held that the buyer, whose two separate purchases of one gram were misdemeanors, could not be convicted of the "facilitation" felony under that theory. *Abuelhawa*, 129 S.Ct. at 2104.

The *Abuelhawa* Court rejected the Fourth Circuit's holding that the buyer's use of his cell phone to purchase cocaine qualified as facilitation "because it 'undoubtedly made [the seller's] cocaine distribution easier; in fact, 'it made the sale possible.'" *Id.* (quoting *United States v. Abuelhawa*, 523 F.3d 415, 421 (4th Cir.2008)). Although "on the literal plane, the phone calls could be described as 'facilitating' drug distribution[,]" the Court concluded that "stopping there would ignore the rule that, because statutes are not read as a collection of isolated phrases, '[a] word in a statute may or may not extend to the outer limits of its definitional possibilities.'" *Id.* at 2105 (citations omitted). In Abuelhawa's case, the Court explained,

> the Government's literal sweep of "facilitate" sits uncomfortably with common usage. Where a transaction like a sale necessarily presupposes two parties with specific roles, it would be odd to speak of one party as facilitating the conduct of the other. A buyer does not just make a sale easier; he makes the sale possible. No buyer, no sale; the buyer's part is already implied by the term "sale," and the word "facilitate" adds nothing. We would not say that the borrower facilitates the bank loan.

*Id.*

The Court also pointed out that "[t]he common usage that limits 'facilitate' to the efforts of someone other than a primary or necessary actor in the commission of a substantive crime has its parallel in" case law recognizing that "where a statute treats one side of a bilateral transaction more leniently, adding to the penalty of the party on that side for facilitating the action by the other would upend the calibration of punishment set by the legislature[.]" *Id.* at 2106. Explaining that Congress intended the meaning of the term "facilitate" to be "equivalent" to judicially interpreted "terms like 'aid,'

'abet,' and 'assist[,]' " *id.* at 2106, the Court reasoned that the Government's "broader reading of 'facilitate' would for practical purposes skew the congressional calibration of respective buyer-seller penalties[,]" by ignoring that "Congress meant to treat purchasing drugs for personal use more leniently than the felony of distributing drugs, and to narrow the scope of the communications provision to cover only those who facilitate a drug felony." *Id.* at 2106–07.

In *Hyche v. Indiana,* 934 N.E.2d 1176, 1177 (Ind.Ct.App. 2010), a buyer (Hyche) made telephone arrangements to purchase ecstasy, then sent two accomplices to complete the transaction. During the exchange, one of the sellers was shot and killed. Although Hyche was not present during the transaction or shooting, he was convicted of dealing and felony murder.

The Indiana Court of Appeals held that, "[b]ecause the record is devoid of any evidence that Hyche was acting in any capacity other than that of a purchaser, it is insufficient to support a dealing conviction and therefore a felony murder conviction based thereon." *Id.* at 1180. Interpreting a statute that defines "dealing" as a " 'transfer from one (1) person to another of a controlled dangerous substance,' " the court reasoned that Hyche

> acted as the transferee, not the transferor. The fact that he called another person to request drugs no more makes him a dealer in ecstasy than it would make a customer who calls the florist a dealer in flowers. The State's cited cases are factually distinguishable because each involved a defendant involved on the distribution side of the transaction. The record is devoid of any evidence that Hyche was acting on the distribution side. Thus, he cannot be said to have organized the delivery of ecstasy under the statute.

*Id.* at 1179 (citations omitted).

In *Rhode Island v. Oliveira and Hill,* 882 A.2d 1097 (R.I. 2005), the Supreme Court of Rhode Island interpreted a statutory felony murder scheme in which the "sale, delivery, or other distribution" of controlled dangerous substances qual-

ifies as a predicate for first degree felony murder, whereas the possession of CDS with the intent to manufacture or deliver constitutes a predicate for second degree felony murder. In that case, the prosecution presented evidence that after Oliveira and Hill arranged to buy $43,000 worth of cocaine from a seller who traveled from Texas to make the delivery, the seller was shot and killed. The two buyers were charged with first degree felony murder based on the State's theory that "the killing occurred during the course of the 'attempted receipt and redistribution of the drugs.'" *Id.* at 1107. At trial, Oliveira and Hill argued that "no reasonable reading of the statute encompasse[d] their actions because all the evidence ... demonstrated that they were unsuccessfully attempting to purchase or possess a controlled substance, not to manufacture, sell, deliver, or distribute it." *Id.* at 1108. The trial court agreed with the State, however, that the two buyers could be found "guilty of an attempt to distribute cocaine, based on the fact that they attempted to purchase over $43,000 worth of cocaine for further distribution." *Id.*

The Supreme Court of Rhode Island reversed, holding that the distribution statute did "not encompass one who attempts to purchase or receive a controlled dangerous substance from a seller, distributor, or deliverer, absent proof that the purchaser or receiver has taken a substantial step toward reselling, redelivering, or redistributing the controlled substances." *Id.* at 1117–18. The Court reasoned that "the terms 'sell,' 'deliver,' and 'distribute' all refer to the actions of one who transfer *to another,* and are the opposite of one who purchases or receives *from another.*" *Id.* at 1112. Moreover, it was not "absurd for the Legislature to distinguish between 'delivery' or 'attempted delivery' from 'possession with intent to deliver' for purposes of exposing a defendant to the mandatory sentence of life imprisonment" imposed under the first degree felony murder statute. *Id.* at 1117. Although

> the evidence tying [Hill] and Oliveira to the attempt to possess a substantial quantity of cocaine was overwhelming and the intent to deliver element can be inferentially established from the quantity of cocaine they sought to acquire,

the record is devoid of any evidence that establishes, either directly or inferentially, that [Hill] or Oliveira took any action in an effort to further distribute or deliver the cocaine. Consequently, we are constrained to conclude that their motions for judgment of acquittal on the first-degree felony-murder count, should have been granted.

*Id.* at 1118.[10]

Like the subject case, *Graves v. Kentucky*, 17 S.W.3d 858 (Ky.2000), concerned a "drug deal gone wrong." In *Graves*, the three defendants attempted to buy a kilogram of cocaine in order to resell it. After they delivered the $27,000 purchase price to the sellers in a parking lot, the sellers drove away without delivering the cocaine. In two vehicles, the buyers chased the sellers at high speeds through Louisville streets, until one of the buyers' vehicles struck and killed two innocent occupants of a vehicle that crossed its path. All three buyers were convicted of trafficking and "wanton murder," which is Kentucky's codified version of felony murder.

---

**10.** The court went on to explain in a footnote:

We note that although we hold that "possession with intent to deliver" is not a predicate felony for first-degree felony murder, it may support a conviction for second-degree felony murder. *See State v. Stewart*, 663 A.2d 912, 917 (R.I.1995) ("A felony that is not enumerated in § 11-23-1 can, however, serve as a predicate felony to a charge of second-degree murder."). Second-degree felony murder is not a lesser-included offense to first-degree felony murder because it requires proof of an additional fact—a determination that the crime was committed in an inherently dangerous manner. *See State v. Briggs*, 787 A.2d 479, 487 (R.I.2001) ("A lesser included offense is 'one that does not require proof of any additional element beyond those required by the greater offense.'") (quoting *State v. Rodriquez*, 731 A.2d 726, 729 (R.I.1999)); *Stewart*, 663 A.2d at 919 ("We believe that the better approach is for the trier of fact to consider the facts and circumstances of the particular case to determine if such felony was inherently dangerous in the manner and the circumstances in which it was committed, rather than have a court make the determination by viewing the elements of a felony in the abstract."). Conversely, first-degree felony murder requires no such determination. A homicide committed during the course of an enumerated predicate offense is first-degree felony murder "simply because the Legislature has said so." *State v. Washington*, 581 A.2d 1031, 1034 (R.I.1990) (quoting *State v. Villani*, 491 A.2d 976, 980 (R.I.1985)).
*Rhode Island v. Oliveira & Hill*, 882 A.2d at 1118, n. 9.

The Supreme Court of Kentucky held that there was sufficient circumstantial evidence to support the murder convictions against all three buyers based on the predicate felony of drug trafficking, which is a statutory felony encompassing both the attempted sale or transfer of CDS and the attempted possession of CDS with intent to sell or transfer. *Id.* at 862–63. Although the court did not specifically identify the buyers' attempted possession of the cocaine as the factual basis for the trafficking charges against them, the evidence supported only that theory since the buyers never obtained the cocaine and there was no evidence they attempted to sell it in advance of possessing it. The evidence of attempted possession with intent to distribute was therefore sufficient to support the wanton murder convictions. *Id.* at 862–63.

■ Applying the lessons of *Abuelhawa, Hyche, Oliveira & Hill* and *Graves,* we conclude that treating drug buyers as second-degree principals in the drug sellers' distribution stretches the concept of "participation" and "aiding and abetting" too far. The phrase "or dispense" 1) "means to deliver to the ultimate user or the human research subject by or in accordance with the lawful order of an authorized provider," 2) "dispense" indicates to prescribe, administer, package, label, or compound a substance for delivery. Crim. § 5–101(k). To "distribute" means, "with respect to a controlled dangerous substance, to deliver other than by dispensing." Crim. § 5–101(l). In turn, "deliver" means "to make an actual constructive, or attempted transfer or exchange from one person to another whether or not remuneration is paid[.]" Crim. § 5–101(h).

■ Because CDS "distribution" requires a delivery *to another person,* it is clear that the General Assembly intended the prohibition against distribution to encompass only those who deliver CDS, not those to whom CDS is delivered. The State's characterization of appellant as a participant in Yates's distribution would require us to ignore the "common usage" principles cogently articulated in *Abuelhawa* and *Hyche.* We therefore agree with appellant that he may not be convicted of

distribution based solely on his role as buyer and receiver of the marijuana.

The State's attempt to limit the scope of its "buyer as distributor" theory to certain types of buyers is not persuasive. In its brief, the State posits that

liability as an aider and abettor to distribution is limited to those circumstances where, as here, the defendant's role in the transaction is more than simply an end-of-the-line, arm's length buyer purchasing for personal use. Where the buyer takes an active role in soliciting the distributor and arranging the transaction, and where it is clear that the transaction is occurring in the middle of the distribution chain, and not between the seller and user, the buyer could be guilty of distribution.

The "active role" component of the standard suggested by the State is untenably vague and overbroad. Allowing a jury to convict a drug buyer of distribution on an aiding and abetting theory that is circumscribed only by whether the buyer took an "active role in soliciting the distributor" could effectively eviscerate any distinction between possession and distribution, because any buyer who initiates a drug purchase arguably takes "an active role in soliciting the distributor."

Nor do we agree that a buyer who is in a "distribution chain" may be convicted as an aider and abettor of the seller's distribution. It is neither necessary nor consistent with the legislative scheme to treat a drug buyer who purchases with intent to distribute as a second-degree principal in the drug seller's distribution. There simply is no need to contort the language and meaning of Crim. § 5–602(1) to cover this scenario, because when a buyer purchases CDS with the intent to distribute it to others, that buyer may be convicted, as a first-degree principal, of possession with intent to distribute, which is a separate felony under Crim. § 5–602(2). And, if that same buyer actually takes steps toward distributing the CDS he has in his possession to another person, he may then be convicted, as a first-degree principal, of attempted distribution of marijuana, which, as the State concedes, is only a common

law misdemeanor in Maryland. *See, e.g., Lane v. State,* 348 Md. 272, 283–84, 703 A.2d 180 (1997) ("By Maryland common law, the attempt to commit a crime is, itself, a separate crime—a misdemeanor" unless the attempt is made a felony by statute). Finally, if the buyer actually makes a delivery, then he or she is guilty of distribution, again as a first-degree principal.

For these reasons, although the State is correct that appellant's intent to distribute the marijuana differentiates his purchase from cases in which the buyer purchased CDS solely for personal use, we do not agree that this fact supports a conviction for distribution as a second degree principal. As noted in *Oliveira and Hill,* the appropriate charge in these circumstances—when the buyer solicits the sale and receives the CDS with the intent to later distribute it to others, but there is no evidence of any attempt at distribution—is possession with intent to distribute. *See* note 10, *supra.* A contrary conclusion would put the proverbial cart before the horse, by allowing the State to convict a CDS buyer like appellant, who purchases for re-distribution but has not yet acted upon his intent to distribute, of actually distributing the CDS.[11]

In this case, the jury did convict appellant of felony possession with intent to distribute, in violation of Crim. § 5–602(2), and appellant does not challenge the sufficiency of the evidence supporting that conviction. Even though appellant might have been convicted of felony murder based on the alternative predicate felony of possession with intent to distribute, the prosecution did not argue that alternative, and the jury was not instructed about it. *Cf. Graves,* 17 S.W.3d at 862 ("In this case, the jury was instructed that it could find each defendant guilty [of felony murder] as either a principal or accomplice under alternative theories of criminal liability, i.e.,

---

11. The parties to this appeal have treated the relationship between appellant and Yates as buyer and seller and we have done likewise. It is worth noting, however, that there may not have been a *bonafide* buyer-seller transaction at all, but a case of theft pretences.

trafficking by sale or transfer, or trafficking by possession with intent to sell or transfer.").

To the extent that the State's position in this appeal may be understood as an assertion that there is no material difference between these two crimes, so that we may treat them as fungible felonies for purposes of affirming appellant's second degree felony murder conviction, we disagree. We acknowledge that possession with intent to distribute and distribution might fairly be viewed as two sides of the same coin because both crimes fall under Crim. § 5–602, and both crimes are punished as felonies under Crim. § 5–607(a). As this case demonstrates, however, there is a substantive difference between the two crimes when the State attempts to use them as the predicate for felony murder.

■ Here, the jury was permitted to convict appellant of felony murder based on the theory that he aided and abetted Yates in distributing the marijuana. Consequently, the jury, when determining whether the manner in which the marijuana was distributed created a substantial risk of death or bodily injury so as to warrant a felony murder conviction, naturally focused on the conduct of Yates, who came armed with a gun and later used it to shoot and kill an innocent bystander. In contrast, if the jury had been asked to convict appellant of felony murder based on the theory that he obtained possession of the marijuana with an intent to distribute it, its primary focus would not have been on the conduct of Yates, but on the conduct of appellant, who was unarmed during the purchase and obtained the marijuana through fraud and flight, rather than force. To be sure, it is also possible that the jury might have found beyond a reasonable doubt that the manner in which appellant committed that possession felony created a foreseeable risk of death, sufficient to convict him of second-degree felony murder. For purposes of this appeal, however, the material fact is that, depending on which of the two underlying felonies the jury was considering, it might have considered different evidence and/or weighed the evidence differently.

Because the evidence was insufficient to convict appellant of distribution as an aider and abettor, and the arguments and instructions pertaining to the felony murder charge allowed the jury to decide guilt based on the predicate felony of distribution, we are constrained to reverse appellant's second-degree felony murder conviction. Having foregone the opportunity to present to the jury possession with intent to distribute as an alternate predicate for convicting appellant of felony murder, the State is precluded by double jeopardy principles from re-trying appellant for that crime. *See, e.g., Burks v. United States*, 437 U.S. 1, 11, 98 S.Ct. 2141, 2147, 57 L.Ed.2d 1 (1978) ("The Double Jeopardy Clause forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding."); *In re Petition for Writ of Prohibition*, 312 Md. 280, 313, 539 A.2d 664 (1988) ("[I]nsufficiency of the evidence is ... a singularly inappropriate basis for ordering a new trial, because if the evidence was insufficient to go to the jury in the first place, double jeopardy principles preclude a new trial.").

## III.

### Conspiracy to Distribute

Appellant's second assignment of error "piggybacks" his first. Incorporating his previous argument "as it regards a purchaser's liability in relation to distribution," appellant contends that "being a mere purchaser cannot cause one to be guilty of *conspiracy* to distribute marijuana either."

The State counters that "the evidence was sufficient to convict [appellant] of conspiracy to distribute" because appellant "and at least two other people acted in concert to solicit and arrange for Yates to distribute four pounds of marijuana to Kohler." In the State's view, it "proved that Kohler, Jagd, and Wi[m]bush, along with Yates and Griffin, acted together to accomplish the unlawful act of transferring of four pounds of marijuana from Yates to Kohler."

The crime of conspiracy is defined in Maryland as:

[T]he combination of two or more persons to accomplish some unlawful purpose, or to accomplish a lawful purpose by unlawful means. The essence of a criminal conspiracy is an unlawful agreement. The agreement need not be formal or spoken, provided there is a meeting of the minds reflecting a unity of purpose and design. [Furthermore], the crime is complete when the unlawful agreement is reached, and no overt act in furtherance of the agreement need be shown.

It is well settled that, in order validly to charge conspiracy, a charging document must allege both the fact of the conspiracy and its object.

*Campbell v. State,* 325 Md. 488, 495–96, 601 A.2d 667 (1992) (internal quotation marks and citations omitted).

 Appellant was charged with conspiring, on the date of the transaction, to distribute marijuana with Griffin and Yates, who were the sellers. In accordance with the State's "buyer as distributor" theory, the trial court instructed the jury that it could convict appellant if he and Yates "entered into an agreement with at least one other person to commit the crime of distribution of marijuana." But, on the facts of this case, there appears to be no meeting of the minds to engage in a sale of drugs because Kohler was acting in bad faith from the outset. His pretended offer of the purchase price was nothing but a charade to facilitate his theft of the marijuana. Kohler cannot have conspired to purchase marijuana when he obviously never intended to purchase it. Moreover, even if the State proved that appellant conspired with his cohorts to *buy* marijuana from appellees, the State's evidence was insufficient to convict appellant of conspiring with Yates and Griffin to *distribute* marijuana. We must therefore reverse appellant's conspiracy conviction as well.[12]

---

12. Appellant also makes a "plain error" challenge to the trial courts jury instruction concerning second-degree felony murder. We need not consider this challenge based on our reversal, on sufficiency of evidence grounds, of that conviction.

CONVICTIONS FOR FELONY MURDER AND CONSPIRACY TO DISTRIBUTE MARIJUANA, REVERSED; CONVICTION FOR POSSESSION OF MARIJUANA WITH INTENT TO DISTRIBUTE, AFFIRMED; COSTS TO BE PAID BY BALTIMORE COUNTY.